Jimmy Robert HUMMEL, petitioner, Appellant,

v.

STATE of Minnesota, Respondent.

No. C1–00–139.

Supreme Court of Minnesota.

Oct. 12, 2000.

Barry V. Voss, Voss & Hickman, P.A., Minneapolis, for appellant.

Michael Hatch, Attorney General, Robert A. Stanich, Asst. Attorney General, St. Paul, Donald F. Ryan, Crow Wing County Attorney, Brainerd, for respondent.

## OPINION

LANCASTER, Justice.

This case comes before the court on appellant Jimmy Robert Hummel's appeal from a district court order dismissing his petition for postconviction relief. In his petition, appellant requested a new trial based on allegations of ineffective assistance of trial and appellate counsel in connection with his 1990 first-degree murder conviction. The facts underlying that conviction are set out in *State v. Hummel*, 483 N.W.2d 68, 70–71 (Minn.1992). The district court dismissed appellant's petition without conducting an evidentiary hearing, finding appellant's petition to be both time-barred and procedurally-barred. Appellant contends that the court abused its discretion in dismissing his petition without an evidentiary hearing. Because we conclude that the petition, files, and record demonstrate that appellant is entitled to no relief, we affirm the district court's decision.

On September 21, 1990, a jury found appellant guilty of first-degree murder and he was subsequently sentenced to life in prison. This court affirmed that conviction on April 17, 1992.

On October 6, 1999, nearly seven and one-half years after this court affirmed his conviction, appellant petitioned for post-conviction relief based on allegations of ineffective assistance of trial and appellate counsel. Appellant raises three arguments in support of his petition. First, appellant complains that, during his murder trial, he and his family witnessed the trial judge sleeping and brought this to the attention of counsel, who failed to take any curative action with regard to the judge's alleged sleeping. Second, appellant complains that during voir dire and opening and closing statements his attorney conceded that appellant committed the murder without first obtaining appellant's consent to make the admission. Third, appellant argues that his privately-retained appellate counsel, the same counsel at both trial and appeal, failed to raise any of the above arguments or an ineffective assistance of trial counsel claim on direct appeal. Accordingly, appellant requested a new trial.

On November 24, 1999, the postconviction court dismissed appellant's petition without an evidentiary hearing. The court held that appellant failed to pursue his claim with due diligence because he waited to petition for more than nine years after his conviction and approximately seven and one-half years after the conviction was affirmed. Therefore, the court held that appellant's petition was time-barred. Alternatively, the court found appellant was procedurally-barred from bringing the petition because he knew of the facts underlying his ineffective assistance claims during his direct appeal and therefore he should have raised the claims at that time. Because he failed to do so, the court found that appellant's petition was procedurally-barred under the rule of *State v. Knaffla,* 309 Minn. 246, 252, 243 N.W.2d 737, 741 (1976).[1] Appellant argues that the district court abused its discretion when it dismissed his petition without an evidentiary hearing and asks us to reverse that decision. We affirm the district court's decision, but on alternative grounds.

■■■ A petition for postconviction relief is a collateral attack on a conviction that carries a presumption of regularity. *See State ex rel. Gray v. Tahash,* 279 Minn. 248, 250, 156 N.W.2d 228, 229 (1968). This court reviews a postconviction court's decision only to determine whether sufficient evidence supports the court's findings. *See Sutherlin v. State,* 574 N.W.2d 428, 432 (Minn.1998); *Scruggs v. State,* 484 N.W.2d 21, 25 (Minn.1992). We overturn a postconviction court's decision only if the court abused its discretion. *See Wilson v. State,* 582 N.W.2d 882, 884 (Minn.1998); *Scruggs,* 484 N.W.2d at 25.

■■■ Postconviction relief may be sought in Minnesota pursuant to Minn. Stat. § 590.01, subd. 1 (Supp.1999).[2] A

---

1. The *Knaffla* court held:

    [I]n a postconviction proceeding, relief is to be predicated, not upon a determination as to whether direct appeal from the conviction was taken within the prescribed time limitations, but rather upon compliance with the procedural requirements of Minn. St. c. 590. It must be emphasized, however, that where direct appeal has once been taken, all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief.

    *Knaffla,* 309 Minn. at 252, 243 N.W.2d at 741. This court has held that the *Knaffla* bar ap-

plies to ineffective assistance of trial counsel claims. *See Hale v. State,* 566 N.W.2d 923, 926 (Minn.1997); *Black v. State,* 560 N.W.2d 83, 85 (Minn.1997).

2. Minnesota Statutes § 590.01, subd. 1, reads:

    Except at a time when direct appellate relief is available, a person convicted of a crime, who claims that:

    (1) the conviction obtained or the sentence or other disposition made violated the person's rights under the Constitution or laws of the United States or of the state; or,

    (2) scientific evidence not available at trial, obtained pursuant to a motion granted

postconviction proceeding may require an evidentiary hearing. *See* Minn.Stat. § 590.04, subd. 1 (1998).[3] At the hearing, a petitioner bears the burden of establishing by a fair preponderance of the evidence facts that warrant a reopening of his case. *See Hale,* 566 N.W.2d at 926. In order to meet that burden, a petitioner's allegations must be supported with more than mere argumentative assertions that lack factual support. *See id.* However, if the petition, files, and record "conclusively show that the petitioner is entitled to no relief," a court need not conduct an evidentiary hearing. Minn.Stat. § 590.04, subd. 1; *see Zenanko v. State,* 587 N.W.2d 642, 644 (Minn.1998); *Fratzke v. State,* 450 N.W.2d 101, 102 (Minn.1990). In order to support his ineffective assistance claims, appellant must allege facts that demonstrate (1) that his counsel's performance fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for counsel's errors, the result of the murder trial would have been different. *See Gates v. State,* 398 N.W.2d 558, 561 (Minn.1987) (citing *Strickland v. Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). We consider each of appellant's ineffective assistance allegations in turn.

■ First, appellant claims that the trial judge slept during portions of his trial and complains that his attorney failed to object. Appellant fails to point to any specific errors that occurred as a result of his attorney's lack of objection. On direct appeal from his murder conviction, appellant attacked specific evidentiary rulings that, he argued to no avail, violated his constitutional rights. *See Hummel,* 483 N.W.2d at 71. Now, however, he has not explained how counsel's failure to object to the sleeping judge, if indeed the judge was sleeping, prejudiced his case. As a result, this allegation fails to support appellant's ineffective assistance claim, which requires him to allege facts that show a reasonable probability that but for the alleged error the outcome of his murder trial would have been different. The Eighth Circuit Court of Appeals addressed a similar ineffective assistance case involving an allegedly sleeping judge. *See Martin v. United States,* No. 93–2054, 1993 WL 265072, at *2 (8th Cir. July 20, 1993). The court stated that the petitioner did "not specif[y] any trial error that occurred as a result of the judge's alleged sleeping during parts of his jury trial," and therefore the petitioner had "not shown how he was prejudiced by counsel's failure to raise this issue on appeal." *Id.* Likewise, we find that appellant failed to specify how the allegedly sleeping judge prejudiced the outcome of his trial.

Further weighing against appellant is the fact that he and his family knew of the alleged sleeping the moment it occurred, yet he did not file his petition for postconviction relief until nine years after the trial. Petitioner offers no explanation or excuse for his delay. *Cf. Black,* 560 N.W.2d at 85. As each year passes, it becomes more difficult to address a claim

---

under subdivision 1a, establishes the petitioner's actual innocence; may commence a proceeding to secure relief by filing a petition in the district court in the county in which the conviction was had to vacate and set aside the judgment and to discharge the petitioner or to resentence the petitioner or grant a new trial or correct the sentence or make other disposition as may be appropriate. Nothing contained herein shall prevent the supreme court or the court of appeals, upon application by a party, from granting a stay of a case on appeal for the purpose of allowing an appellant to apply to the district court for an evidentiary hearing under the provisions of this chapter. The proceeding shall conform with sections 590.01 to 590.06.

3. Minnesota Statutes § 590.04, subd. 1, reads:

Unless the petition and the files and records of the proceeding conclusively show that the petitioner is entitled to no relief, the court shall promptly set an early hearing on the petition and response thereto, and promptly determine the issues, make findings of fact and conclusions of law with respect thereto, and either deny the petition or enter an order granting appropriate relief.

like appellant's. Witnesses, if they are still available, have fading memories. In this case, the judge that appellant complains of has since retired. For all these reasons, we conclude that the postconviction court did not abuse its discretion when it did not grant appellant an evidentiary hearing based on this allegation.

■ Second, appellant complains that he did not consent to his attorney's admission of guilt during trial and therefore he received ineffective assistance of counsel. Appellant states in his brief that he "was neither aware of, nor agreed or consented to, counsel's admission that appellant killed without justification." Appellant cites various pages in the trial transcript on which his attorney allegedly conceded his guilt without consent. The state responds by pointing to several portions of the transcript that demonstrate that counsel's admission was part of his ultimate defense strategy, namely to argue that appellant did not commit first-degree murder but rather some lesser offense. The state further argues that appellant never expressed dissatisfaction with counsel's strategy during trial or during the next nine years.

■ This court recognizes the "basic principle that a criminal defense attorney cannot admit his client's guilt to the jury without first obtaining the client's consent to this strategy." *State v. Wiplinger,* 343 N.W.2d 858, 860 (Minn.1984); *see State v. Moore,* 458 N.W.2d 90, 96 (Minn.1990).[4] The result of such attorney misconduct is a new trial for the petitioner. *See Moore,* 458 N.W.2d at 96. In this case, the record clearly demonstrates that appellant's attorney admitted that appellant killed Pesheck. But the record also reveals that this admission was part of counsel's strategy to

prove that appellant did not premeditate but instead acted out of passion, rendering him not guilty of first-degree murder but of some lesser offense. This court acknowledges such an approach as a valid trial strategy. *See Moore,* 458 N.W.2d at 96; *Wiplinger,* 343 N.W.2d at 861. Nonetheless, without the defendant's consent to the admission, even this type of strategy may result in a new trial. *See Moore,* 458 N.W.2d at 96; *Wiplinger,* 343 N.W.2d at 861. Despite appellant's assertion in his petition that "prior to opening statement, [his attorney] did not seek consent, or disclose, that he was going to admit [appellant's] killing of his former girlfriend and, in fact, [appellant] specifically forbade his lawyer from doing so," our own review of the trial transcript reveals that appellant did in fact consent to the strategy during voir dire.

> [State's Attorney:] Your Honor, I have asked that we have a discussion out of the presence of the jury.
>
> In view of the defense counsel's voir dire in which he has admitted on behalf of his client that some of the material elements of the offense, namely that the defendant did it, I thought, pursuant to the decision in *State v. Moore* and the supreme court's admonishment in that case, the consent of the defendant should be obtained on the record.
>
> [Appellant's Attorney:] Your Honor, I have also read that opinion and I think that [the state's attorney] is correct in pointing that out and I have talked to my client at length as well as his family and Jimmy [addressing appellant], you understand what we are putting on the record at this point, do you not?
>
> [Appellant Hummel:] Yes.

On the contrary, in *State v. Provost,* this court found that where the record was totally devoid of any objection to or dissatisfaction with counsel's unilateral admission, the defendant effectively acquiesced in his counsel's strategy and therefore was not entitled to a new trial. *See State v. Provost,* 490 N.W.2d 93, 97 (Minn.1992).

---

4. In *Wiplinger* and *Moore,* the defendants' attorneys conceded the defendants' guilt, and in both cases the respective defendant voiced his objection to the trial court. *See Moore,* 458 N.W.2d at 95; *Wiplinger,* 343 N.W.2d at 860. In both cases, this court held that the admission necessitated a new trial. *See Moore,* 458 N.W.2d at 96; *Wiplinger,* 343 N.W.2d at 861.

[Appellant's Attorney:] You understand what we are admitting to is that Shana died of stab wounds?

[Appellant Hummel:] Yes.

[Appellant's Attorney:] And that you caused those stab wounds?

[Appellant Hummel:] Yes.

[Appellant's Attorney:] But what this trial is about is not who did it, it is, we are admitting you did it, what we are talking about is what your state of mind was at the time.

[Appellant Hummel:] Yah.

[Appellant's Attorney:] That is what this case is about, right?

[Appellant Hummel:] Yah.

[Appellant's Attorney:] And you have given me permission to present this case in this particular way?

[Appellant Hummel:] Yes.

[Appellant's Attorney:] Thank you, I have nothing further to add on the record at this time.

[The Court:] We stand in recess.

Appellant's allegation that he never consented to counsel's admission is contradicted by the record. As a result, this allegation does not lead to a factual dispute that entitles appellant to an evidentiary hearing. *See* Minn.Stat. § 590.04, subd. 1.

■ Finally, appellant complains that on his appeal the same counsel failed to raise the above issues or claim ineffective assistance of trial counsel. At the outset we note that appellate counsel has no duty to raise all possible issues on appeal, but may exclude those that detract from more meritorious issues. *See Wilson*, 582 N.W.2d at 886. Further, because we have determined that the allegations underlying appellant's claim of ineffective assistance of trial counsel lack merit and thus do not entitle him to an evidentiary hearing, appellate counsel did not provide ineffective assistance by not pursuing an ineffective assistance of trial counsel claim. *See Sutherlin*, 574 N.W.2d at 435. This allegation does not entitle appellant to an evidentiary hearing.

Because the petition, files, and record demonstrate that appellant is not entitled to relief, we affirm the district court's dismissal of appellant's petition for postconviction relief.

Affirmed.

GILBERT, J., took no part in the consideration or decision of this case.