**Abdullahi Abdi JAMA, Petitioner, Appellant,**

v.

**STATE of Minnesota, Respondent.**

No. A07–1864.

Court of Appeals of Minnesota.

Sept. 23, 2008.

Maury D. Beaulier, Hellmuth & Johnson, PLLC, Eden Prairie, MN, for appellant.

Lori Swanson, Attorney General, St. Paul, MN, Michael O. Freeman, Hennepin County Attorney, Linda M. Freyer, Assistant County Attorney, Minneapolis, MN, for respondent.

Considered and decided by MINGE, Presiding Judge; HUSPENI, Judge;* and MUEHLBERG, Judge.**

## O P I N I O N

MINGE, Judge.

Appellant argues in a postconviction petition that he was deprived of a fair trial as a result of his attorney's ineffective assistance. The state opposes relief, in part, on the ground that the issue could have been raised in appellant's direct appeal. Because fairness requires review and because appellant did not deliberately and inexcusably fail to raise the issue on direct appeal, he may raise the ineffective-assistance-of-trial-counsel issue in this postconviction proceeding. But because appellant has failed to show that his attorney rendered ineffective assistance, we affirm.

## FACTS

In November 2004, appellant Abdullahi Abdi Jama and victim Y.E. were socializing with several other people in a Saint Louis Park apartment. Late in the night, Y.E. pulled a gun from his waistband and Jama asked to see it. Shortly after the transfer of the gun, it discharged and the bullet struck Y.E. in the face, killing him. The state charged Jama with second-degree manslaughter.

At trial, the state presented evidence that Y.E. handed the gun to Jama, who racked the slide of the gun, and that the gun then discharged. Jama contended that Y.E. had tossed the gun to him, that he had stood to catch it, and that the weapon discharged as it came into his hands. Ultimately, a jury found Jama guilty of second-degree manslaughter. Jama appealed, arguing that the evidence was insufficient to support his conviction. This court concluded that the record supported the jury verdict and affirmed. *State v. Jama*, No. A05–1542, 2006 WL 2405073, at *1–*4 (Minn.App. Aug. 22, 2006), *review denied* (Minn. Nov. 14, 2006). Jama also argued on appeal that because one of the witnesses at trial, A.D., had recanted portions of his testimony in a postverdict deposition, he was entitled to an evidentiary hearing or a new trial. *Id.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

** Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

at *4. Because this court determined that A.D.'s recantation of his court statements lacked facial validity and that his testimony was not pivotal because other evidence and testimony supported the verdict, we also affirmed on that issue. *Id.* at *4–*5.

Following that appeal, Jama filed a petition for postconviction relief and requested a new trial. He argued that he had ineffective assistance of counsel at trial because counsel was negligent during jury selection and failed to request an interpreter for certain witnesses. He further argued that his appellate counsel was ineffective · because he failed to raise these issues on direct appeal. He pointed out that his trial attorney was his attorney on direct appeal. Appellant's petition for an evidentiary hearing and to vacate his conviction and set the case for a new trial was summarily denied by the postconviction court. This appeal follows.

### ISSUES

I. Is Jama barred from seeking postconviction review of his ineffective-assistance-of-trial-counsel claims?

II. Was Jama's trial counsel ineffective in failing to adequately voir dire jurors or to request an interpreter?

### ANALYSIS

■■■ When reviewing a postconviction court's denial of relief, an appellate court extends a broad review of both questions of law and fact. *Martin v. State,* 748 N.W.2d 294, 295 (Minn.2008). Legal issues are reviewed de novo and factual issues are reviewed for sufficiency of the evidence. *Id.* " 'A petitioner seeking postconviction relief has the burden of establishing, by a fair preponderance of the evidence, facts that would warrant relief.' " *Id.* (quoting *Ferguson v. State,* 645 N.W.2d 437, 442 (Minn.2002)). "An evidentiary hearing is not required unless there are

material facts in dispute which must be resolved to determine the postconviction claim on its merits." *Hale v. State,* 566 N.W.2d 923, 926 (Minn.1997).

### I.

■■ The first issue is whether Jama's postconviction-petition claims are barred by *State v. Knaffla,* 309 Minn. 246, 243 N.W.2d 737 (1976), because they were not raised by appellant on direct appeal. According to *Knaffla,* "where direct appeal has once been taken, all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief." 309 Minn. at 252, 243 N.W.2d at 741. Two exceptions to this general rule are when: (1) the "claim is so novel that it can be said that its legal basis was not reasonably available to counsel at the time the direct appeal was taken and decided"; or (2) fairness requires review and the petitioner "did not deliberately and inexcusably fail to raise the issue on direct appeal." *Roby v. State,* 531 N.W.2d 482, 484 (Minn.1995) (quotation. omitted). The application of the *Knaffla* rule to claims of ineffective assistance of trial counsel has a mixed history. The rule may be applied to limit consideration of such issues in postconviction proceedings. *Black v. State,* 560 N.W.2d 83, 85–86 (Minn.1997). But appellate review has been undertaken in the interests of justice when ineffective-assistance-of-counsel claims were not raised on direct appeal. *Hale,* 566 N.W.2d at 926–27.

■■ Appeals based on claims of ineffective assistance of counsel have been brought in several ways. One case suggests that the best method to raise such an issue is to file for postconviction relief before a direct appeal is brought. *Roby,* 531 N.W.2d at 484 n. 1. The rules allow for filing a timely notice of appeal and then

staying consideration of the appeal pending resolution of the claim of ineffective assistance of counsel. Minn. R.Crim. P. 28.02, subd. 4(4). A petitioner may pursue a claim of ineffective assistance of counsel following direct appeal if an additional evidentiary hearing is necessary to properly evaluate the legal representation. *Robinson v. State*, 567 N.W.2d 491, 495 (Minn. 1997); *see also Black*, 560 N.W.2d at 86 n. 1 ("An exception [to the *Knaffla* rule] exists ... when the claim is such that the reviewing court needs additional facts to explain the attorney's decisions. In such cases, we have said that consideration of a claim of ineffective assistance would be appropriate in a petition for postconviction relief.").

But no Minnesota cases have squarely considered whether the *Knaffla* bar applies when the same attorney represented the petitioner at trial and on direct appeal.[1] At the outset, we note that in this situation considerations of fairness are implicated. Counsel may have an inherent conflict of interest because counsel cannot be expected to allege his or her own incompetence as an aspect of appellate representation. For this reason, a petitioner's failure to raise an ineffective-assistance-of-trial-counsel claim on direct appeal cannot be considered inexcusable. Courts in other jurisdictions have reached this conclusion. *E.g., Nelson v. State*, 649 So.2d 1299, 1300 (Ala.Crim.App.1994) ("If trial counsel is also serving as appellate counsel, counsel cannot be expected to allege on appeal his own ineffectiveness."

(quotation omitted)); *People v. Stewart*, 121 Ill.2d 93, 117 Ill.Dec. 187, 520 N.E.2d 348, 354 (1988) (declaring that a refusal to consider a petitioner's ineffective-assistance-of-counsel claims was not manifestly unjust because "defendant was [not] represented by the same counsel during his trial proceedings and on his direct appeals"); *Lynch v. State*, 951 So.2d 549, 551 (Miss.2007) ("[W]here the defendant is represented by the same counsel at trial and on appeal, ineffective assistance claims have been asserted via proper post-conviction proceedings, even though the point was not preserved at trial and was not raised on direct appeal."); *Davis v. State*, 123 P.3d 243, 246 (Okla.Crim. App.2005) ("[W]e find that the importance of the Sixth Amendment compels us to consider all claims of ineffective assistance of trial counsel raised in a timely application for post-conviction relief and no longer apply a procedural bar when appellate counsel and trial counsel were the same."); *State v. Litherland*, 12 P.3d 92, 100 (Utah 2000) ("[A] defendant is not in a position to raise the argument that trial counsel was ineffective when that defendant is represented by the same counsel on appeal as at trial.").

In sum, in these settings where trial and appellate counsel are the same, we conclude that for purposes of *Knaffla*, failure to raise claims of ineffective assistance of trial counsel is presumptively neither deliberate nor inexcusable and that, in fairness, further review should not be barred. We further conclude that in this

---

1. In *Hummel v. State*, 617 N.W.2d 561 (Minn. 2000), the petitioner complained that his privately retained appellate counsel, who had also been trial counsel, failed to raise an ineffective assistance of trial counsel claim on direct appeal. *Id.* at 563. The *Hummel* court concluded that because the allegations underlying appellant's claim of ineffective assistance of trial counsel were not meritorious, appellate counsel did not provide ineffective assistance by not pursuing a claim of ineffective assistance of trial counsel and that, as a result, the appellant was not entitled to an evidentiary hearing. *Id.* The *Hummel* case did not consider whether the *Knaffla* bar applied when the same counsel represents a petitioner at trial and on direct appeal.

proceeding, *Knaffla* does not bar postconviction consideration of Jama's claims of ineffective representation of trial counsel, and we proceed to consider Jama's claims.[2]

## II.

■ The second issue is whether Jama was denied effective assistance of trial counsel. Such claims involve mixed questions of law and fact, and are reviewed de novo. *State v. Rhodes,* 657 N.W.2d 823, 842 (Minn.2003). Effective assistance of counsel forms a part of the Sixth Amendment right to a fair trial under the United States Constitution. *See id.; see also Strickland v. Washington,* 466 U.S. 668, 684–86, 104 S.Ct. 2052, 2063–64, 80 L.Ed.2d 674 (1984). A defendant must show that his counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's errors, the result would have been different. *Gates v. State,* 398 N.W.2d 558, 561 (Minn.1987).

"To act within an objective standard of reasonableness, an attorney must provide his or her client with the representation that an attorney exercising the customary skills and diligence ... [that a] reasonably competent attorney would perform under

similar circumstances." *State v. Gustafson,* 610 N.W.2d 314, 320 (Minn.2000) (alteration in original) (quotation omitted). We consider the totality of the evidence to determine whether counsel was ineffective. *Rhodes,* 657 N.W.2d at 842. We do not review matters of trial strategy. *State v. Doppler,* 590 N.W.2d 627, 633 (Minn.1999); *see Opsahl v. State,* 677 N.W.2d 414, 421 (Minn.2004) (discussing the reluctance of appellate courts to second-guess trial strategy, including what investigation to undertake). A strong presumption exists "that a counsel's performance falls within the wide range of 'reasonable professional assistance.'" *State v. Jones,* 392 N.W.2d 224, 236 (Minn.1986).

### A. Jury Selection

■ Jama argues that his counsel was ineffective during jury selection because he did not question jurors more diligently about their experience with gun safety.[3] Minnesota courts have recognized that "[a]ttorneys must make tactical decisions during jury selection, and a claim of ineffective assistance of counsel cannot be established by merely complaining about 'counsel's failure to challenge certain jurors or his failure to make proper objec-

---

**2.** Jama also argues that he suffered from ineffective assistance of appellate counsel because his appellate counsel failed to raise on direct appeal the issues considered here. The basic standard for judging a claim of ineffective assistance of appellate counsel is the same as that applied to trial counsel's performance. *Swenson v. State,* 426 N.W.2d 237, 239–40 (Minn.App.1988). Because we reach Jama's ineffective-assistance-of-trial-counsel claims and consider them on the merits, we need not consider whether Jama's attorney was ineffective in failing to raise them on direct appeal.

**3.** Jama contends that an evidentiary hearing is required to investigate these claims. An evidentiary hearing must be held on a petition for postconviction relief unless "the petition and the files and records of the proceeding

conclusively show that the petitioner is entitled to no relief." Minn. Stat. § 590.04, subd. 1 (2006). "A postconviction court must evaluate whether, in light of the significance of the claimed error and the evidence presented at trial, a petitioner has raised and factually supported material matters that must be resolved in order to decide the postconviction issues on their merits." *State v. Rhodes,* 627 N.W.2d 74, 88 (Minn.2001). Because we are able to address Jama's ineffective-assistance-of-counsel claim based on the transcript of voir dire and have the benefit of the district court's findings regarding trial counsel's strategy, we are able to fully consider his allegations based on the record before us, and there is no need to remand for an evidentiary hearing.

tions.'" *Tsipouras v. State,* 567 N.W.2d 271, 276 (Minn.App.1997) (quoting *State v. Prettyman,* 293 Minn. 493, 494, 198 N.W.2d 156, 158 (1972)), *review denied* (Minn. Sept. 18, 1997).

Jury selection depends heavily on counsel's experience, perception of and rapport with prospective jurors. In *Dunn v. State,* 499 N.W.2d 37, 38 (Minn.1993), it was determined that representation was not ineffective when counsel questioned a potential jury member regarding the juror's relationship with a potential witness and determined that no real risk of juror bias was evident. *See also State v. Anderson,* 603 N.W.2d 354, 357 (Minn.App.1999) (determining that counsel was not ineffective despite his failure to challenge jurors regarding their prior experiences with crime because his strategy was not objectively unreasonable and the jurors indicated that their experiences with crime would not affect their impartiality), *review denied* (Minn. Mar. 14, 2000).

Jama urges us to adopt a rule articulated by the Utah Supreme Court in *State v. Litherland,* 12 P.3d 92, 100 (Utah 2000). In *Litherland,* a minor was raped and sexually abused, the crime occurred in a small community, and several potential jurors knew the parties or had information about the crime before trial. *Id.* at 95. Noting that jury selection is intrinsically subjective, the Utah court stated that "appellate review becomes an inherently speculative exercise" when reviewing the effective assistance of counsel in that context. *Id.* at 100. Nonetheless, that court stated that the presumption that counsel provided effective assistance during this part of the process can be rebutted by showing:

(1) that defense counsel was so inattentive or indifferent during the jury selection process that the failure to remove a prospective juror was not the product of a conscious choice or preference; (2)

that a prospective juror expressed bias so strong or unequivocal that no plausible countervailing subjective preference could justify failure to remove that juror; or (3) that there is some other specific evidence clearly demonstrating that counsel's choice was not plausibly justifiable.

*Id.* (footnote omitted). Applying this analytical framework, the *Litherland* court concluded that the retention of two jurors with possible bias against the petitioner was a conscious choice, rather than one made of ignorance or indifference and that the petitioner failed to rebut the presumption that the conscious choices exercised by his counsel were plausibly justifiable. *Id.* at 101. The *Litherland* opinion may be helpful in evaluating a claim of ineffective assistance of counsel, and we do not read it to conflict with our own jurisprudence.

### 1. *Inattentiveness or Indifference*

 In this case, a critical consideration was the negligent handling of a loaded gun, which was passed between Jama and Y.E. Either or both of them may have failed to observe proper safety precautions. The district court determined that both Jama's counsel and the prosecutor were

> essentially arguing (or following a strategy) at trial that someone involved failed to take proper care of the gun. The State's theory was culpable negligence, and [Jama's] trial counsel stated in closing argument that the 'risk was created by the victim' and that the shooting happened 'because of what the victim had done before he tossed the gun to [Jama by leaving the gun loaded].'

These findings have a sufficient factual basis. Jama's primary complaint appears to be that his defense counsel did not actively work to remove prospective jurors

with a demonstrated interest in gun safety or personal opposition to handguns.

Jama's attorney actively participated in the jury-selection process. He asked potential jurors, including jurors Jama complains of in his motion for postconviction relief, several questions. As might be expected, many jurors had thoughts or opinions on the importance of gun safety, and several had gun-safety training. In this case, gun-safety considerations could have weighed either in favor of or against Jama's defense to culpable-negligence manslaughter. The facts were in dispute, and the jury had to decide whether Jama or the victim negligently handled the weapon. Jama's trial counsel did not exhibit the degree of indifference or inattentiveness that constitutes ineffective assistance of trial counsel by failing to challenge every juror with an opinion related to handguns and gun safety. We decline to second-guess counsel's chosen trial strategy.

### 2. Expressed Bias of a Prospective Juror

Jama points out that one prospective juror stated on a questionnaire that he had "a hard time understanding foreign cultures and their ability to assimilate." When questioned, he stated that he thought people should try to assimilate as quickly as possible, suggesting that by not assimilating quickly, people from another country or cultural heritage take advantage of the system and benefit from the system while avoiding responsibility.

Because the record indicates that Jama is an immigrant, this expression of bias is cause for concern. However, this juror was ultimately dismissed by the prosecutor. Therefore, the jury verdict was not attributable to any error in his counsel's failure to challenge this juror.

### B. Failure to Request an Interpreter

Jama also argues that he received ineffective assistance of counsel when no translator was provided for one of the state's witnesses. Again, a petitioner must show that his counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's errors, the result would have been different. *Gates,* 398 N.W.2d at 561.

The interpreter statute requires the appointment of an interpreter for a criminal defendant or witness when the individual is "disabled in communication" because he or she has "difficulty in speaking or comprehending the English language, cannot fully understand the proceedings or any charges made against the person, . . . or is incapable of presenting or assisting in the presentation of a defense." Minn.Stat. §§ 611.31, .32 (2006). We review the district court's decision to appoint or not appoint an interpreter under an abuse-of-discretion standard. *See State v. Perez,* 404 N.W.2d 834, 838 (Minn.App. 1987), *review denied* (Minn. May 20, 1987). "[W]e afford the district court broad discretion based on its first-hand view of indicators that a person is handicapped in communication, including: mispronunciations, pauses, facial expressions, and gestures." *State v. Cham,* 680 N.W.2d 121, 126 (Minn.App.2004) (quotation omitted), *review denied* (Minn. Jul. 20, 2004).

Jama asserts that at least one witness, A.D., needed an interpreter. A.D.'s testimony spanned 52 transcribed pages. At several points, A.D. did not respond to questions that were posed to him until they were rephrased or repeated, and his grammar was occasionally confused. However, despite the imperfect communication, A.D. repeated what he intended to convey, and the prosecutor and the defense attorney both repeated questions

that A.D. seemed to misunderstand. At the outset of cross-examination, defense counsel and A.D. had the following exchange, which is illustrative of these problems and the measures counsel and A.D. took to correct them:

DEFENSE COUNSEL: Mr. [D], I have a few questions to ask you. If you don't understand my question, would you please tell me and I'll rephrase the question?

A.D.: Excuse me?

DEFENSE COUNSEL: If you don't understand my questions, would you please tell me and I'll repeat or rephrase the question? I want you to understand my questions.

A.D.: Okay. I will.

DEFENSE COUNSEL: If you don't understand my questions—

A.D.: I'll tell you if I don't understand it.

DEFENSE COUNSEL: All Right.

What time did you arrive at Abdi Ahmed's apartment?

A.D.: Excuse me?

DEFENSE COUNSEL: What time did you arrive at Abdi Ahmed's apartment?

A.D.: What time I got up to this apartment?

DEFENSE COUNSEL: Yes.

A.D.: Round 8:45, 9:00.

Notably, this court determined in the direct appeal that A.D.'s testimony was "not pivotal" and that the verdict was supported by other testimony.

[E]vidence other than [A.D.]'s testimony supports the verdict. The jury heard testimony from other witnesses that Jama handled the gun before it discharged and also viewed the videotaped statements to the police in which the witnesses said that [the victim] passed the gun to Jama and Jama briefly handled the gun. And the jury heard testimony that a person holding a gun discharged in the circumstances Jama described would have cut or bruised hands; Jama had no injuries. *Jama*, 2006 WL 2405073, at *5. The record constitutes an extensive presentation of A.D.'s English skills. It indicates that Jama had ample opportunity to cross-examine A.D., who was able to respond to defense counsel's questions. Although they sometimes had to be repeated, his answers were reasonably understandable. The district court and the attorneys at trial demonstrated an understanding of A.D.'s testimony, and even if it was error for defense counsel to fail to request an interpreter for A.D., this error was not prejudicial. The district court did not abuse its discretion by not granting a new trial or evidentiary hearing on this ground.

*C. Confrontation Clause*

▮▮▮▮ Lastly, Jama claims that his counsel's failure to request an interpreter deprived him of his confrontation rights. The right of an accused to confront the witnesses against him is guaranteed by the United States and Minnesota Constitutions. U.S. Const. amends. VI, XIV; Minn. Const. art. 1, § 6; *State v. Greer*, 635 N.W.2d 82, 89 (Minn.2001). The essence of confrontation is the opportunity to cross-examine opposing witnesses. *Greer*, 635 N.W.2d at 89. "[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *State v. Holliday*, 745 N.W.2d 556, 566 (Minn.2008) (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 294, 88 L.Ed.2d 15 (1985)). The Confrontation Clause is not violated by limitations on cross-examination as long as the jury is presented with sufficient information to draw inferences regarding the witness's

reliability. *State v. Ferguson,* 742 N.W.2d 651, 657 (Minn.2007).

Here, A.D. took the stand and was available for cross-examination. The transcribed cross-examination totals 22 pages. Defense counsel asked A.D. how much he drank on the evening in question, whether any "promises" had been made to him for testifying against Jama, whether he had thought he would be held responsible for the shooting and his level of education. Counsel also asked about his prior inconsistent statement made to a private investigator whom Jama had hired. A.D. answered this line of questioning in a willing and understandable manner. We conclude that Jama's confrontation rights were not violated, that the failure of Jama's trial counsel to request an interpreter did not violate Jama's right to confrontation, and that the district court did not err by denying Jama's postconviction petition for a new trial on this ground.

## DECISION

We conclude that Jama was not barred from seeking postconviction review of his ineffective-assistance-of-trial-counsel claims. However, we further conclude that Jama did not demonstrate that he received ineffective legal representation in connection with jury selection or as a result of not requesting an interpreter and that even if such assistance were ineffective, it was not prejudicial to the outcome of the trial. Finally, we conclude the district court did not err by denying Jama's petition for postconviction relief.

**Affirmed.**