**Bryan Doyle SCHERF, Appellant,**

v.

**STATE of Minnesota, Respondent.**

**No. A08–1566.**

Supreme Court of Minnesota.

Sept. 23, 2010.

David W. Merchant, Chief Appellate Public Defender, G. Tony Atwal, Assistant State Public Defender, St. Paul, Minnesota, for appellant.

Lori Swanson, Attorney General, John B. Galus, Assistant Attorney General, St. Paul, Minnesota; and John J. Muhar, Itasca County Attorney, Grand Rapids, Minnesota, for respondent.

OPINION

PAGE, Justice.

Appellant Bryan D. Scherf was charged by complaint with second-degree burglary, in violation of Minn.Stat. § 609.582, subd. 2(a) (2008), theft of property valued in excess of $2,500, in violation of Minn.Stat. § 609.52, subd. 2(1) (2008), and fifth-degree controlled substance crime, in violation of Minn.Stat. § 152.025, subd. 2(a)(1) (2008).[1]  Following a jury trial in Itasca County District Court, Scherf was found guilty of the burglary and theft offenses and not guilty of the controlled substance offense.  Scherf appealed his convictions to the court of appeals, claiming that the theft verdict had to be overturned because the jury did not make a specific finding as to the value of the property stolen.  Finding plain error, the court of appeals nonetheless affirmed the convictions because the error did not affect Scherf's substantial rights.  We denied further review on March 18, 2008, and, on April 14, 2008, Scherf filed a petition for postconviction relief claiming newly discovered evidence.  Specifically, Scherf claimed that an affidavit by Ryan Hughes, in which Hughes takes sole responsibility for the burglary, provided a basis for a new trial.  The postconviction court dismissed the petition without holding an evidentiary hearing and the court of appeals affirmed.  We also affirm.

On July 25, 2005, Laurie Pitzen left her home at approximately 5:30 a.m.  Jane Latimer, who lives next door to Pitzen's home, saw an older model white car, later identified as belonging to Scherf, driving toward Pitzen's home at 9:30 a.m. occupied by what appeared to be a lone male driver.  The car parked in front of Pitzen's home

---

1.  The complaint alleged that Scherf and Ryan Hughes jointly committed the burglary and theft.

for approximately 20 minutes and then left. When Pitzen returned home, she discovered that her home had been burglarized and that a number of items with an estimated value of $30,000 were missing:

At some point that same day, Nicole Glassmyer went to Scherf's trailer home to meet a friend, Ryan Hughes. Hughes, who lived out of his car, was also a friend of Scherf's and occasionally stayed the night at Scherf's home. Glassmyer had met Scherf only days before. Scherf was not present when Glassmyer arrived at his home. Before Scherf returned, Hughes told Glassmyer that he had stolen some property and stored it at Scherf's home, but now needed to "get rid of" it. When Scherf returned home, Scherf and Hughes went to another room to talk, after which Hughes asked Glassmyer to help him move the stolen property out of Scherf's home. Glassmyer and Hughes moved the majority of the stolen property to a barn located on Glassmyer's mother's property using Scherf's car. Glassmyer testified that Scherf stayed at his residence while she and Hughes moved the property and that Hughes never indicated to her that Scherf was involved in the burglary.[2]

Scherf did not assist Glassmyer and Hughes in moving the stolen property, but later that evening Scherf called his uncle, Gary Scherf, with regard to some jewelry. Because Gary Scherf was not home, Scherf left a message with Gary Scherf's mother telling her that he had an opportunity to purchase jewelry for $100 and wanted Gary Scherf to look at it to see if it was valuable. The following day, Scherf, Hughes, and Glassmyer went to Gary Scherf's home to have him look at the jewelry. On the way, they drove past a police officer and Scherf instructed Hughes to "get that stuff out of my car." In response, Hughes threw a bag containing some of the stolen jewelry out the car window. When Scherf, Hughes, and Glassmyer arrived at Gary Scherf's home, Scherf showed Gary Scherf some jewelry and told him that a magnetic box attached to the underside of his car contained more jewelry.

At some point after this meeting, the police conducted searches of Scherf's trailer home and car. In the trailer home, the police found various items that had been stolen from Pitzen's house. Attached to the underside of the car, the police found a magnetic box containing jewelry belonging to Pitzen, as well as methamphetamines.

Hughes was arrested, charged with burglary, and incarcerated pending trial. Hughes eventually entered an *Alford* plea [3] to second-degree burglary and fifth-degree possession. He was released pending sentencing, but failed to appear for his presentence investigation interview on March 9, 2006, and failed to appear for sentencing on April 3, 2006. Hughes was not rearrested until June 4, 2006. As a result, Hughes was not available to testify at Scherf's trial, which concluded on April 6, 2006.

At the conclusion of Scherf's trial, the district court submitted the case to the jury without instructing the jury that in order to convict Scherf of the theft offense the State had to prove that the value of the stolen property exceeded $2,500. Scherf did not object to the court's failure to give

---

2. Glassmyer was impeached with a previous statement she gave to law enforcement in which she indicated that Scherf was responsible for the burglary. Glassmyer testified that she had lied to law enforcement in her previous statement in order to protect Hughes.

3. *See North Carolina v. Alford,* 400 U.S. 25, 38, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970) (holding that in some circumstances, a court may constitutionally accept a defendant's guilty plea even though the defendant maintains his innocence).

the instruction. The jury found Scherf guilty and Scherf was convicted and sentenced to 18 months in prison for the burglary offense and a concurrent 12–months–and–1–day sentence for the theft offense. The sentences were stayed for ten years. As a condition of the stayed sentences, Scherf was ordered to serve 90 days in the county jail.

At the court of appeals, Scherf challenged his convictions based on the district court's failure to properly instruct the jury on the elements of the theft offense. *State v. Scherf*, No. A06–1543, 2008 WL 170702, at *1 (Minn.App. Jan. 22, 2008), *rev. denied* (Minn. Mar. 18, 2008). The court of appeals affirmed Scherf's convictions and we denied further review.

■ On April 14, 2008, Scherf filed a petition for postconviction relief along with a request for an evidentiary hearing based on newly discovered evidence. Scherf argued that a March 25, 2008, sworn affidavit from Hughes, in which Hughes claimed sole responsibility for the burglary and denied that Scherf participated in the crime, constituted newly discovered evidence requiring a new trial. Specifically, Hughes claimed in the affidavit that he took Scherf's car, drove to Pitzen's home, entered the home through an unlocked door, and stole anything of value he could find. Further, Hughes claimed that he hid the property at various locations, including Scherf's trailer home, and that he committed the crime without the knowledge or assistance of Scherf.

The postconviction court summarily denied Scherf's petition without holding an evidentiary hearing. The postconviction court held that Scherf knew of Hughes' existence and failed to establish that the substance of Hughes' testimony was unknown to him at the time of trial. The postconviction court concluded that since knowledge of Hughes' testimony could be imputed to Scherf, the sworn affidavit did not constitute newly discovered evidence. The postconviction court also held that the testimony of Hughes was not likely to produce an acquittal or more favorable result on retrial as Hughes' claims were not credible. The court of appeals, relying on *Whittaker v. State*, 753 N.W.2d 668 (Minn.2008), affirmed the denial of postconviction relief on the same grounds as the district court. *See Scherf v. State*, No. A08–1566, 2009 WL 2925809, at *1–3 (Minn.App. Sept. 15, 2009).

■ "A petition for postconviction relief is a collateral attack on a conviction that carries a presumption of regularity." *Hummel v. State*, 617 N.W.2d 561, 563 (Minn.2000). "A petitioner seeking postconviction relief has the burden of establishing, by a fair preponderance of the evidence, facts which would warrant a reopening of the case." *State v. Warren*, 592 N.W.2d 440, 449 (Minn.1999). A postconviction court's findings are reviewed to determine whether there is sufficient evidentiary support in the record. *Dukes v. State*, 621 N.W.2d 246, 251 (Minn.2001); *Russell v. State*, 562 N.W.2d 670, 672 (Minn.1997). "We afford great deference to a [postconviction] court's findings of fact and will not reverse the findings unless they are clearly erroneous." *Dukes*, 621 N.W.2d at 251; *see State v. Bradford*, 618 N.W.2d 782, 794 (Minn.2000).

■ Before newly discovered evidence can serve as the basis for a new trial, a petitioner is required to establish that: (1) the evidence was not known to the defendant or his counsel at the time of trial; (2) the failure to learn of the evidence before trial was not due to a lack of diligence; (3) the evidence is material, not merely impeaching, cumulative, or doubtful; and (4) the evidence will probably produce either an acquittal or a more fa-

vorable result. *Woodruff v. State,* 608 N.W.2d 881, 888 (Minn.2000); *Rainer v. State,* 566 N.W.2d 692, 695 (Minn.1997). The petitioner must establish each of the four requirements in order to receive a new trial. *Rainer,* 566 N.W.2d at 695. An evidentiary hearing is unnecessary if the substance of the affidavit purporting to contain newly discovered evidence, when taken at face value, is insufficient to entitle the petitioner to the relief requested. *Whittaker,* 753 N.W.2d at 668; *Leake v. State,* 737 N.W.2d 531, 535 (Minn.2007).

Scherf's newly discovered evidence claim is controlled by our decision in *Whittaker.* In *Whittaker,* a defendant convicted of murder claimed that information contained in an affidavit filed by his co-conspirator, Baldwin, who was unavailable to testify at trial, constituted newly discovered evidence. 753 N.W.2d at 670. An eyewitness to the murder told police that there were two perpetrators, one had on a red jacket and was wielding a semi-automatic pistol, and the other was brandishing a sawed-off rifle. *Id.* Whittaker and Baldwin were arrested together on the night of the murder near the crime scene. *Id.* At the time of arrest Whittaker was wearing a red jacket and Baldwin was concealing an automatic pistol and a sawed-off shotgun. *Id.* Baldwin was tried and convicted separately for his involvement in the murder, then subpoenaed as a witness at Whittaker's trial, and given a grant of immunity, but refused to testify. As a result of his refusal to testify, Baldwin was held in contempt of court. *Id.* After Baldwin and Whittaker were convicted, Baldwin submit-

ted an affidavit claiming that he and two other people committed the murder and then gave Whittaker the red jacket. *Id.* We affirmed the denial of Whittaker's postconviction petition explaining that "the statement of an individual who refused to testify at trial is not 'unknown'... if, at the time of trial, the petitioner knew the substance of the testimony that the individual might provide." *Id.* at 671; *see also Pierson v. State,* 637 N.W.2d 571, 577 (Minn. 2002) (holding that the newly discovered evidence exception is inapplicable when the evidence shows that the petitioner undoubtedly knew at the time of trial that the co-participant had information regarding the petitioner's involvement in those events); *State v. Warren,* 592 N.W.2d 440, 449–50 (Minn.1999) (holding that the requirement that the evidence has been discovered since the trial is not met simply by offering the post-trial testimony of a co-conspirator who invoked his Fifth Amendment right not to testify at trial).

Scherf claims that the postconviction court erred in refusing to grant him a new trial based on Hughes' affidavit. But here, as in *Whittaker, Pierson,* and *Warren,* Scherf is relying on an affidavit from a witness who was unavailable to testify at Scherf's trial even though Scherf admittedly knew the witness existed at the time of trial and knew the substance of what the witness would have testified to had the witness been available at trial.[4] Therefore, we conclude that the district court did not abuse its discretion when it summarily denied Scherf's petition for postconviction relief because Scherf failed to es-

---

4. Affiants in *Whittaker, Warren,* and *Pierson* claimed they were with the defendant when the crime was committed or soon thereafter. We held that because the defendants were with the affiants and also witnessed the activities that formed the factual basis of the affidavits, the defendants would have known at the time of trial the substance of the testimony the affiants might provide. Here, Hughes claims he was alone when the crime was committed, but this difference is not material because Scherf had reason to know of Hughes' expected testimony through Glassmyer's and Hughes' comments immediately following the burglary.

tablish that allegations contained in Hughes' affidavit constituted evidence that was unknown to him or his counsel at the time of his trial. As a result, we affirm the postconviction court's denial of Scherf's petition for postconviction relief.

Affirmed.

STRAS, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.