James Robert Ozzie WELLS,
petitioner, Appellant,

v.

STATE of Minnesota, Respondent.

No. A13–0338.

Court of Appeals of Minnesota.

Dec. 2, 2013.

Rodd Tschida, Minneapolis, MN; and Daniel R. Savaloja, Blaine, MN, for appellant.

Lori Swanson, Attorney General, St. Paul, Minnesota; and Anthony C. Palumbo, Anoka County Attorney, Marcy S. Crain, Assistant County Attorney, Anoka, MN, for respondent.

Considered and decided by SMITH, Presiding Judge; WORKE, Judge; and RODENBERG, Judge.

## OPINION

WORKE, Judge.

Appellant challenges the district court's denial of his postconviction-relief petition, arguing that the district court erred by sentencing him to an executed 48–month prison term for first-degree burglary after sentencing him to probation for the greater offense of first-degree assault, and by entering a conviction for second-degree assault. We conclude that the district court did not abuse its discretion in sentencing appellant on the burglary and first-degree-assault convictions, but erred by also entering a conviction for second-degree assault. Therefore, we affirm in part, reverse in part, and remand.

## FACTS

On the morning of May 11, 2010, E.B. was awakened by his wife who told him that a strange man was outside their home. E.B. heard the sound of breaking glass and jumped out of bed. He reached the top of the staircase and saw appellant James Robert Ozzie Wells walking toward him. Wells asked for D.B., E.B.'s son. E.B. replied that he did not know if D.B. was home, and told his wife to call the police. Wells swung a baseball bat at E.B. Wells continued to ask for D.B. as he delivered several blows to E.B. with the bat. E.B. repeatedly responded that he did not know where D.B. was and turned onto his side to protect his pacemaker. Wells hit E.B. 10 or 11 times until D.B. intervened.

When officers arrived, D.B. reported that Wells is the father of his on-again-off-again girlfriend. Wells told police officers that he intended to assault D.B. after hearing that D.B. sexually assaulted his daughter. E.B. was taken to the hospital in critical condition. E.B. survived, but suffered broken ribs, and surgeons removed his ruptured spleen.

The jury found Wells guilty of first-degree assault, second-degree assault, and first-degree burglary. Wells moved for a dispositional departure in sentencing. The presentence investigation recommended that Wells receive the presumptive guidelines' sentences—48 months in prison for

the first-degree-burglary conviction and 86 months in prison for the first-degree-assault conviction. E.B. submitted a victim-impact statement, indicating that Wells failed to display remorse and appeared to be punishing him during the assault. E.B. feared what would have happened if his son had not intervened and expressed concern about whether Wells would have attacked his wife had he not been home. E.B. stated that his family lives in fear and that his health is poor.

On May 2, 2012, the district court held a sentencing hearing. Wells's attorney argued that Wells met the criteria for a dispositional departure because of his age, lack of a criminal record, and support of his family and community. Wells's attorney argued that Wells accepted responsibility for his actions, admitted to a court psychologist that what he did was not right, and had stated that: "If I had gotten [D.B.] I would have been at peace," which, his attorney argued, showed Wells's remorse for injuring the unintended victim. Wells's attorney also argued that a dispositional departure was justified because E.B. did not sustain a "particularly lasting or debilitating" injury. Finally, Wells's attorney argued that Wells was not a danger to society because he was unlikely to reoffend.

The district court stated that it had given significant consideration to Wells's sentence because he was an otherwise-law-abiding person who "without any legal excuse at all, committed an absolutely horrendous crime." To Wells's attorney's description of E.B.'s injury as not "lasting or debilitating," the district court responded: "to argue ... that this is not a lasting, debilitating injury ... is offensive.... There is no question that what [Wells] did in demolishing his spleen is going to cause life-long problems." The district court determined that "a departure on both convic-

tions ... would unduly depreciate the seriousness of the crime," and stated:

> You are being punished [Wells] because we, as a civilized society, don't allow vigilantism. That's what this was. You took the law into your own hands.... And frankly, from what you have said ... you would have been okay with what you did had it been [D.B.] .... that's wrong too. You know, no matter who you are going to beat with a bat in their own home, it's wrong, and you don't have the right to do that. And I think you know that.

> So what I'm left with ... is determining whether the sentence for the second count, the 86–month[s] [for] assault in the first degree is appropriate, whether it's necessary to protect public safety to commit you to the commissioner [of corrections] for that amount of time and, frankly, I don't believe it is.

The district court imposed a 48–month executed sentence on the first-degree-burglary conviction, and a concurrent 86–month stayed sentence on the first-degree-assault conviction, subject to 20 years' probation. The district court concluded that the *Trog* factors supported a departure on the first-degree-assault conviction because Wells was 59 years old, had no criminal record, was cooperative, was respectful in court, and had the support of his family and community. The district court concluded that Wells "will be amenable to treatment in a probationary setting after" he served his 48–month prison sentence. The district court also entered a conviction for second-degree assault, a lesser-included offense of the first-degree-assault conviction, but did not impose a sentence.

On November 27, 2012, Wells filed a petition for postconviction relief under Minn.Stat. § 509.02 (2012), alleging that the district court inappropriately sentenced him to prison after determining

that he was amenable to probation. He also argued that the district court unlawfully entered a conviction for second-degree assault. The district court denied Wells's petition for postconviction relief. This appeal followed.

## ISSUES

I. Did the district court abuse its discretion by imposing an executed sentence on the burglary offense and a stayed sentence with probation on the assault offense?

II. Did the district court err by entering a judgment of conviction of second-degree assault after entering a conviction of first-degree assault for the same victim?

## ANALYSIS

█ Wells challenged his sentence by way of a postconviction-relief petition. This court reviews a denial of a petition for postconviction relief for an abuse of discretion. *Davis v. State,* 784 N.W.2d 387, 390 (Minn.2010). A district court "abuses its discretion when its decision is based on an erroneous view of the law or is against logic and the facts in the record." *Riley v. State,* 792 N.W.2d 831, 833 (Minn.2011). This court reviews a district court's factual findings under a clearly erroneous standard, and will not reverse those factual determinations unless they are not supported by the record. *Scherf v. State,* 788 N.W.2d 504, 507 (Minn.2010). But this court reviews the district court's legal conclusions de novo. *Leake v. State,* 737 N.W.2d 531, 535 (Minn.2007).

### Dispositional departure

█ Wells argues that the district court erred by sentencing him to 48 months in prison for his first-degree-burglary conviction after applying the *Trog* factors to the first-degree-assault conviction and sentencing him to probation.

█ A district court has broad discretion to depart from the presumptive sentence under the sentencing guidelines. *State v. Gassler,* 505 N.W.2d 62, 69 (Minn. 1993). A district court must order the presumptive sentence provided in the sentencing guidelines unless the case involves "substantial and compelling circumstances" that warrant a downward departure. *State v. Kindem,* 313 N.W.2d 6, 7 (Minn.1981).

█ In weighing whether to grant a downward dispositional departure from the presumptive sentence, a district court considers "the defendant as an individual and [focuses] on whether the presumptive sentence would be best for him *and for society.*" *State v. Heywood,* 338 N.W.2d 243, 244 (Minn.1983) (emphasis added). Relevant factors that the district court may consider include: the defendant's age, prior record, remorse, cooperation, attitude in court, and the support of friends or family. *State v. Trog,* 323 N.W.2d 28, 31 (Minn. 1982).

Essentially, Wells argues that application of *Trog* is an all-or-nothing proposition and that the district court cannot impose an executed prison sentence for one offense while imposing a probationary sentence for a second offense. First, Wells asserts that *Trog* cannot be "applied to one crime and not a lesser offense" that are "part of the same behavioral incident." However, in this case, in which Wells was convicted of first-degree assault and first-degree burglary, the offenses are not considered part of the same behavioral incident. Minn.Stat. § 609.035 (2012) allows for separate convictions and sentences for first-degree burglary and first-degree assault. *See State v. Holmes,* 778 N.W.2d 336, 341 (Minn.2010) (stating that "when there is a single course of conduct involv-

ing one assault, a conviction and sentence for first-degree burglary with assault is not a bar to a conviction and sentence for ... assault committed during the course of the burglary"). Because the offenses were not considered part of a single behavioral incident by statute, two sentences were permissible.

Wells agrees that two sentences were permissible, but argues that it was not permissible to impose a probationary sentence for one offense and an executed sentence for the other. This court has held that "[a]lthough a [district] court has the authority to stay execution of sentence, there is nothing in the statutes which permits a [district] court to stay only part of a felony sentence while executing the balance." *State v. Stacey*, 359 N.W.2d 671, 673 (Minn.App.1984). In *Stacey*, the defendant was convicted of aggravated robbery, and the district court sentenced him to the presumptive 104–month sentence, but executed only 90 months of the sentence and stayed the remaining 14 months and placed him on probation for five years. *Id.* at 671–72. This court modified the sentence by executing the full sentence and vacating the stayed sentence. *Id.* at 673. *Stacey* is not controlling here because the district court did not stay part of a felony sentence and execute the balance; rather, the district court imposed two sentences and executed one of the sentences and stayed the other.

Wells failed to cite to any caselaw in which a district court ordered a sentence similar to the sentence imposed in this matter. The state also failed to cite to any relevant caselaw. However, in *State v. Petrin*, this court stated that a district court may impose a probationary sentence for one crime and a concurrent executed sentence for another crime. 354 N.W.2d 578, 579 (Minn.App.1984). The district court in that case sentenced the defendant to 90 months in prison for a criminal-sexual-conduct conviction and to a 24–month stayed sentence for a burglary conviction, and placed the defendant on probation for 20 years, to begin after his discharge from supervised release. *Id.* at 578–79. Petrin argued that the district court erred by imposing a consecutive probationary sentence, and this court modified his probationary sentence to run concurrently to his prison sentence. *Id.* at 579.

Here, the district court sentenced Wells to 48 months in prison for his first-degree-burglary conviction and to 86 months in prison for his first-degree-assault conviction, but stayed execution of that sentence and placed Wells on probation for 20 years. While these sentences are permissible based on *Petrin*, *Petrin* did not address the application of the *Trog* factors.

Wells asserts that he cannot receive a probationary sentence and an executed sentence because *Trog* considers factors relevant to the individual and not the offense; if he is suitable for probation for one offense, then he is suitable for probation for all offenses for which he is sentenced. Wells relies heavily on *Trog* for the principle that its factors are those relevant to the individual. But as stated in *Trog* "[t]he only issue ... is whether the dispositional departure was justified." 323 N.W.2d at 31. *Trog* did not hold that a district court must stay a presumptively executed sentence if application of the factors supports imposition of a stayed sentence with probation; it affirmed the district court's exercise of discretion. *Id.* And it did not address multiple sentences because the defendant in *Trog* was sentenced for only one offense. *Id.* at 29.

The supreme court in *Trog* relied substantially on *State v. Wright*, which was released one year before *Trog*. 310 N.W.2d 461 (Minn.1981). In *Wright*, the supreme court affirmed the district court's exercise

of discretion to stay a presumptively executed sentence because "both [the] defendant and society would be better off if [the] defendant were sent to the workhouse for a short time, then given treatment, and then supervised on probation." *Id.* at 463. *Wright* considered what sentence would be best for the defendant and for society. *Id.* at 462. *Trog* offered additional factors relevant to the offender for the district court to consider in determining whether to depart from the presumptive sentence, but it did not negate the consideration of societal interests. 323 N.W.2d at 31.

As the state argues, the district court's sentencing decision struck a "perfect balance" of requiring Wells to serve a prison sentence for committing a horrific crime followed by a probationary sentence acknowledging his amenability to probation. *Trog* does not prohibit the district court's sentencing decision. And the district court carefully and thoughtfully considered its decision and strived to serve society's interests in imposing punishment on an offender who operated as a vigilante, serving society's and the victim's interests in holding Wells accountable, but only to the extent that he was not a threat to society or the victim.

Wells, however, offers an additional argument for rejecting the district court's sentencing decision. Wells asserts that if we affirm the district court's sentencing decision, "chaos would ensue at the [district] courts" because even if application of the *Trog* factors weighed in favor of a probationary sentence, "it would still be within the [district] court's discretion to execute a prison term."

We do not foresee the district court's sentencing structure causing any "chaos" in the district courts. First, Wells argues that this sentence is unique. But that does not mean that it has not or is not occurring in district courts; it merely means that defendants are not challenging the sentences.[1]

Second, the circumstances when it is permissible to impose multiple sentences are exceptional. Generally, "if a person's conduct constitutes more than one offense under the laws of this state, the person may be punished for only one of the offenses." Minn.Stat. § 609.035, subd. 1. There are exceptions to this rule. *See* Minn.Stat. §§ 609.251 (kidnapping); .585 (burglary); .21, subd. 1b (criminal vehicular homicide relating to an unborn child); .2691 (crimes against unborn children); .486 (commission of a crime while wearing/possessing a bullet-resistant vest); .494 (solicitation of juveniles); .856 (commission of a crime while using a police radio). Wells was sentenced for first-degree assault and first-degree burglary. Because an exception applies and two sentences are permissible this situation, when a court executes one sentence and stays the other, is not likely to occur often.

Third, Wells argues that there will be unpredictability in sentencing if district courts have the discretion to impose an executed sentence after determining that the *Trog* factors support a probationary sentence. The assertion that the sentencing guidelines are established for predictability is accurate. *See* Minn. Sent. Guidelines 1.A. (2012). But the guidelines allow for district courts to consider mitigation and enhancement when deciding if substantial and compelling circumstances exist to warrant a departure. *See id.* 2.D.1. (2012). And Wells took advantage of the

---

1. And appellant here was the beneficiary of the district court's leniency on the assault conviction.

district court's ability to exercise its discretion to permit an adjustment to the presumptive sentence. Predictable sentences here would have resulted in imposition of two executed prison sentences called for by the sentencing guidelines.

■ Finally, and most importantly, the presence of mitigating factors does "not obligate the court to place [a] defendant on probation or impose a shorter term than the presumptive term." *State v. Wall,* 343 N.W.2d 22, 25 (Minn.1984); *see State v. Bertsch,* 707 N.W.2d 660, 668 (Minn.2006) (stating that an appellate court will not disturb the district court's sentence if the district court refused to depart, even if there are reasons for departing downward). Thus, Wells's claim that sentencing will be unpredictable because even if application of the *Trog* factors supports a probationary sentence a district court may still execute a prison term is flawed because a district court always has discretion to impose a presumptive prison sentence *even if* the *Trog* factors support a probationary sentence. *See State v. Olson,* 765 N.W.2d 662, 663 (Minn.App.2009) (stating that a district court does not abuse its discretion by refusing to depart "from a presumptively executed prison sentence, even if there is evidence in the record that the defendant would be amenable to probation").

Wells fails to offer any authority supporting his argument that the district court abused its discretion by imposing an executed sentence and a probationary sentence. Nor does Wells provide a persuasive argument supporting his claim that the district court's sentencing was impermissible. Because *Trog* does not prohibit the district court's sentencing decision and because caselaw supports the district court's imposition of an executed sentence along with a probationary sentence, the district court did not abuse its discretion

by denying Wells's petition for postconviction relief.

### Second-degree-assault conviction

■ Wells also argues that the district court erred by entering a conviction for second-degree assault. Wells asserts that the adjudication of second-degree assault should be vacated under Minn.Stat. § 609.04 (2012) because it is a lesser-included offense of first-degree assault. Construction of a statute presents a question of law. *Carter v. State,* 787 N.W.2d 675, 679 (Minn.App.2010). This court reviews the district court's legal conclusions de novo. *Leake,* 737 N.W.2d at 535.

The state agrees that the district court erred when it entered a judgment of conviction for second-degree assault after Wells was convicted of first-degree assault for the same behavioral incident involving the same victim. A person "may be convicted of either the crime charged or an included offense, but not both." Minn. Stat. § 609.04, subd. 1. An included offense may be a "lesser degree of the same crime" or a "crime necessarily proved if the crime charged were proved." *Id.,* subd. 1(1), (4). In *State v. Hackler,* the supreme court concluded that second-degree assault is a lesser-included offense of first-degree assault even though proof of first-degree assault does not necessarily prove second-degree assault. 532 N.W.2d 559, 559 (Minn.1995). Therefore, the adjudication of second-degree assault must be vacated.

### DECISION

Because it is permissible for a district court announcing multiple sentences to impose an executed sentence, and also a probationary sentence after analyzing the *Trog* factors, the district court's decision to

sentence Wells to probation after serving a prison term was within the district court's discretion. But we remand to the district court to vacate the adjudication of second-degree assault.

**Affirmed in part, reversed in part, and remanded.**