STATE v. ROBERT C. THIEME.

160 N. W. (2d) 396.

July 19, 1968—No. 40,832.

*C. Paul Jones,* State Public Defender, and *Robert E. Oliphant,* Assistant State Public Defender, for appellant.

*Douglas M. Head,* Attorney General, *Richard H. Kyle,* Solicitor General, and *John E. MacGibbon,* County Attorney, for respondent.

Heard before Knutson, C. J., and Nelson, Murphy, Otis, and Frank T. Gallagher, JJ.

NELSON, JUSTICE.

Defendant, Robert C. Thieme, appeals from a conviction of aggravated robbery in violation of Minn. St. 609.245 entered pursuant to a verdict of guilty. He was sentenced to a prison term of not to exceed 20 years.

The state generally agrees with defendant's statement of facts, which is as follows: Shortly before 9 a. m. the morning of August 12, 1966, a pink and white 1955 Plymouth automobile, carrying three men, was seen cruising up and down the main street of Santiago. It stopped in front of the Santiago State Bank, two men got out, put nylon stockings over their faces, and entered the bank. Once inside the bank one of the two men announced that it was a holdup. The second man had a gun. They took the money out of the cash drawers, forced three bank employees and a customer into the vault, and left. The three men drove off in the pink and white car. Shortly afterward Mr. Oliver Tollefson, an officer of the bank, telephoned the sheriff and gave him a witness' description of the car, which description was thereafter put on the police radio.

Shortly before 10 a. m. that day, Maurice Rosenthal, a deputy sheriff of Mille Lacs County, received a radio message containing information about the robbery and a description of the vehicle being sought. He and his partner proceeded to Princeton. As Deputy Rosenthal was standing at the town's main intersection, he saw the Plymouth approaching on Highway No. 95. He stepped into the street, stopped the vehicle at gunpoint, and ordered the three occupants to get out of the car and stand before a nearby building. A this time Deputy Rosenthal saw a white bag which appeared to contain money on the floor of the front seat of the car. The men were searched and defendant was found to have a pistol in his posses-

sion. After they had been searched, the suspects were handcuffed and placed in the sheriff's car.

Defendant claims that while the suspects were in the back seat of a police car across the street Princeton Police Chief John McDonald removed the bag of money from the Plymouth and kept it. This bag was introduced at the trial over defendant's motion to suppress made at arraignment on September 8, 1966. Deputy Rosenthal disagrees in part with defendant's claim. The record indicates that the deputy, while on the witness stand, was asked:

"Q. Is it possible that the men could have been moved into the police car before the paper sack was removed from the—

"A. Positively no, sir, because he [McDonald] took it out for security reasons. So many crowd had gathered that when he noticed, he just took the money and held it up to me this way, just like that, let me know he had the bag, sir."

Chief McDonald testified as follows:

"Q. And do you know for sure whether or not the men had reached this car when you removed the money?

"A. Oh, I had taken possession of the money before they had reached the car."

Deputy Rosenthal and Chief McDonald were the only witnesses who testified on this point. The state therefore contends that the allegation that defendant was in the back seat of the police car at the time the bag of money was removed from the Plymouth is unsupported by testimony.

The following legal issues are presented on this appeal: (1) Was sufficient evidence introduced at the trial to convince the jury of defendant's guilt beyond a reasonable doubt? (2) Was defendant allowed his right to trial by a fair and impartial jury when one of the jurors was married to an employee of a penal institution where defendant had previously been confined? (3) Was evidence introduced at the trial which had been obtained as the result of an illegal search and seizure and was therefore inadmissible?

■ The Santiago State Bank was robbed of approximately $4,800 in

United States currency. Notwithstanding the fact that each of the robbers wore a mask similar to a nylon stocking, a witness, Gladys Tollefson, identified defendant as one of the men and identified a second individual in the courtroom as the other man. Defendant was also identified by one John Storlie as the man who carried the gun.

There was testimony that a third man waited in the car in front of the bank while the other two went in. The car was observed to be a 1955 Plymouth, with a pink and white top. It was shortly after the bank robbery—about 10 a. m.—when a car fitting this description and containing three men was stopped in the village of Princeton on a highway leading from the general area of the Santiago State Bank by Deputy Rosenthal. Defendant was identified as being one of the three men in the car, seated in the right-hand seat of the front of the automobile. At the time defendant was searched a gun was found on his person and this gun was identified as one similar to that used in the robbery. The money recovered from the bag in the automobile was identified as money taken in the robbery.

Defendant testified in his own behalf that he was picked up by the other bank robbers as a hitchhiker on the morning of the robbery and recognized one of the men in the car as a former fellow inmate of the St. Cloud Reformatory, whom he had not seen for 4 months. This seems entirely improbable in the light of rebuttal testimony by Marlys Dobson, Donna Petersen, and Frances Aylward that they had been in the company of defendant and the other two men on the evening before the robbery. The identification of defendant by eyewitnesses produced by the state at the trial and the circumstantial evidence produced by the state appears in this case to stand uncontradicted if defendant's testimony is rejected, and this the jury had a right to do.

We conclude that the record does not support defendant's claim that the court erred in accepting the jury's verdict of guilty because of insufficient evidence. We think it clear that there was sufficient evidence introduced at the trial to convince the jury beyond a reasonable doubt of defendant's guilt. See, State v. Klashtorni, 181 Minn. 203, 232 N. W. 111; State v. Eaton, 171 Minn. 158, 213 N. W. 735.

■ Defendant had been released from the State Reformatory shortly before commission of the robbery with which he was charged. He con-

tends that the court erred in permitting a woman whose husband was an employee of the reformatory to serve as a juror. The fact that her husband was so employed was brought out in voir dire examination. The juror could have been challenged for actual bias, implied bias, or made the subject of one of defendant's peremptory challenges. It is apparent that defendant, after consultation with his counsel, chose to make no such challenge. It is too late to raise this issue now. Any other rule would give defendant a greater right of challenge than is accorded him by statute and would extend an invitation to every defendant to leave unchallenged an objectionable juror only to raise the objection upon appeal. The court did not err in allowing the juror in question to serve. State v. Durnam, 73 Minn. 150, 75 N. W. 1127; State v. Olson, 195 Minn. 493, 263 N. W. 437.

■ Defendant contends that certain items of evidence, the money bag and its contents, were inadmissible because they had been obtained through an illegal search and seizure. The contention of the state is that the search and seizure involved in obtaining these items were well within the limitations permitted by the holding of this court in State v. Harris, 265 Minn. 260, 121 N. W. (2d) 327. There does not appear to be any contention on the part of defendant that the arrest was unlawful.

The right to search incidental to a lawful arrest is a well-established rule of law. See, State v. Demry, 260 Minn. 173, 109 N. W. (2d) 587; State v. Sorenson, 270 Minn. 186, 134 N. W. (2d) 115; State v. Grunau, 273 Minn. 315, 141 N. W. (2d) 815; Warden v. Hayden, 387 U. S. 294, 87 S. Ct. 1642, 18 L. ed. (2d) 782. See, also, Carroll v. United States, 267 U. S. 132, 45 S. Ct. 280, 69 L. ed. 543; and Preston v. United States, 376 U. S. 364, 84 S. Ct. 881, 11 L. ed. (2d) 777, on the right to search a motor vehicle.

The state further contends that in the instant case had not the money been taken into immediate custody it could easily have been lost or taken by bystanders attracted to the scene of the arrest or in the process of the impoundment of the motor vehicle and its movement to a garage or other place of safekeeping. The state argues that these facts distinguish the instant case from the facts in the Preston case.

The record indicates that defendant claimed in his testimony that he was a hitchhiker in the automobile in which the money was found. If

this were true, which the state does not admit, it would raise the question of defendant's right to suppress the evidence found in the automobile.[1] It is our view that the stolen money and the bag in which it was carried were not subject to suppression, since they were not obtained as the result of an unlawful search and seizure.

Affirmed.

---

[1] An annotation of cases involving lawful search of an automobile is contained in 89 A. L. R. (2d) 721.