STATE of Minnesota, Respondent,

v.

Wayne Allen STUFFLEBEAN, Appellant.

No. 82–35.

Supreme Court of Minnesota.

Jan. 21, 1983.

---

Wayne Allen Stufflebean, pro se.

C. Paul Jones, Public Defender, and Mark F. Anderson, Asst. Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Norman B. Coleman, Jr., and Richard D. Hodsdon, Sp. Asst. Attys. Gen., St. Paul, Ronald Schneider, County Atty., Willmar, for respondent.

YETKA, Justice.

This is an appeal by Wayne Allen Stufflebean from his conviction in Kandiyohi District Court of fourth-degree criminal sexual conduct, Minn.Stat. § 609.345 (1980), and attempted third-degree criminal sexual conduct, Minn.Stat. § 609.344 (1980); Minn. Stat. § 609.17 (1980). We affirm the conviction of fourth-degree sexual conduct, but vacate the conviction on the attempt charge.

Approximately 1 week prior to the October 29, 1981, incident upon which the convictions are based, Stufflebean began a romantic relationship with one of the victim's roommates. Stufflebean began sleeping at a trailer home that that roommate shared with the victim and two other women. The roommate and the victim shared a bedroom that was separated into two areas by a movable room divider.

The victim came home from work at about 12:40 a.m. the morning of October 29. She went to her bedroom, shut the divider after observing her roommate and Stufflebean in bed together in the adjoining part of the room, laid down on her bed, and fell asleep fully clothed. That morning, Stufflebean drove the roommate to work and then returned to the trailer.

The victim testified that she awoke at 8:30 a.m. with Stufflebean lying partially nude on top of her as she was lying on her back. Part of her clothing had been removed. She tried to move away, fearful of being hurt. She eventually escaped, put her clothes on, and ran from the trailer. According to Stufflebean, when he returned to the trailer, he had lain down on the roommate's bed to sleep. He was awakened by the victim's "moaning and groaning" and went into her part of the room to see what was wrong, ultimately attempting to give her a therapeutic massage. At some point during the massage, the victim got up and strongly objected. She then got dressed and ran out of the trailer.

After running out of the trailer, the victim drove to a friend's house. The friend testified that the victim arrived around 9:00 a.m. and appeared very upset. The victim told her friend that she had been attacked by the roommate's boyfriend after she awakened to find him on top of her. After talking with the victim for 1 to 2 hours, the friend took her to Rice Memorial Hospital. An examination was conducted and lab tests taken. The results of all tests were negative as to the presence of semen. No injuries were evident. Some redness and soreness was noted in the vaginal area. The examining doctor testified that the redness and soreness could have been caused by attempted sexual intercourse. The evidence also indicates that, as a child, the victim had surgery that made normal sexual penetration physically impossible.

After leaving the hospital, the two women contacted the police and related the incident. That night, two policemen stopped at their trailer after noticing Stufflebean's car parked there. Stufflebean agreed to talk with the officers in the squad car. He initially denied having been at the trailer at the time of the assault, but later admitted that he had been there. He denied any sexual contact with the victim. Stufflebean was placed under arrest.

While in jail the next day, Stufflebean met with the arresting officer and his parole officer. Stufflebean stated at this meeting that there was a conspiracy to frame him on the rape charge and a drug charge. The arresting officer investigated and found no support for these allegations.

1. In the trial judge's chambers prior to commencement of voir dire, defendant Stufflebean, acting *pro se,* moved the court

to dismiss two members of the 20-member jury panel. Stufflebean argued that because the two panelists were employees of a corporation owned in large part by the victim's family and whose president was the victim's father, they would know the victim or her family and likely be biased in favor of conviction. In denying the motion, the trial judge stated that the employment relationship with the corporation was irrelevant. The judge also informed Stufflebean that, during voir dire, he would have an opportunity to examine the prospective jurors to determine if they had any knowledge, personal contact or personal acquaintance with either the victim or her parents. At that time, a determination could be made as to whether any juror should be struck for cause.

During voir dire, Stufflebean had the opportunity to question both employees. One juror worked in a management capacity, but had no responsibility for hiring or firing employees. The judge also questioned this juror individually. The juror knew all of the management personnel at the corporation, knew who the victim was, but did not know the victim on a personal basis. He stated that he would be fair in his consideration of the case.

Stufflebean questioned the other juror on two different occasions. The first series of questions probed her attitude towards trials in light of prior jury service in a license revocation case. The second series of questions elicited that she had worked at the corporation for 4 years and did not know or remember the defendant in any capacity.

At the conclusion of voir dire, Stufflebean exercised one of his five preemptory challenges to strike the management employee. He made no motion to dismiss any potential juror for cause. The state made no challenges for cause and exercised its three preemptory strikes. The 4-year employee ultimately sat on the jury that convicted Stufflebean.

It is argued that the judge's failure to dismiss the two employees denied Stufflebean a fair and impartial jury because Stufflebean was forced to use one challenge to dismiss the management employee and was unable to dismiss the 4-year employee because he had exhausted his remaining challenges. The argument is based on an expanded interpretation of Minn.R.Crim.P. 26.02, subd. 5(1)6 relating to an employee/employer relationship with a defendant, a victim, or a complainant.

It is conceded that the juror in question was not an employee of the complainant. It is argued, however, that the policy behind the rule compels a finding of error in this case. The juror was an employee of the corporation and thus an employee of the victim's father, who was its president and whose family owned the company. The victim lived in her parents' home prior to and during trial. A finding of not guilty would have required the juror to conclude that the victim had lied about an incident involving the sensitive area of criminal sexual conduct. Finally, an attorney for the corporation called the judge during trial to inquire whether steps were being taken to protect the victim's privacy. No actual or demonstrated bias is claimed.

In an appeal based on juror bias, an appellant must show that the challenged juror was subject to challenge for cause, that actual prejudice resulted from the failure to dismiss, and that appropriate objection was made by appellant. *See State v. Kyles,* 257 N.W.2d 378, 381 (Minn.1977); *State v. Hanson,* 286 Minn. 317, 331–32, 176 N.W.2d 607, 616 (1970); *State v. Thieme,* 281 Minn. 47, 50–51, 160 N.W.2d 396, 398 (1968); *State v. Jackson,* 275 Minn. 462, 468, 147 N.W.2d 689, 693 (1967).

Stufflebean objected prior to voir dire. In denying the motion, the judge properly ruled that the relationship of the jurors to the claimant did not constitute automatic grounds for dismissal. He told Stufflebean to determine during voir dire whether bias existed to justify dismissing the jurors. During questioning, no actual bias was shown. No post voir dire motion to strike for cause was made. Reliance is apparently put entirely on intrinsic bias so serious as to require dismissal *per se* under Rule 26.02.

The cases of this court do not support a finding of error here. Jurors standing in similar or other close relationships with parties have been allowed to sit when no showing of prejudice was made. *See City of St. Paul v. Hilger,* 300 Minn. 522, 220 N.W.2d 350 (1974) (juror had seen store detective who made arrest at a bar that both frequented); *State v. Hanson,* 286 Minn. 317, 176 N.W.2d 607 (1970) (cousin of sheriff; business associations with county attorney); *State v. Thieme,* 281 Minn. 47, 160 N.W.2d 396 (1968) (wife of employee of reformatory where defendant was incarcerated prior to trial); *State v. Jackson,* 275 Minn. 462, 147 N.W.2d 689 (1967) (former deputy sheriff); *Atkinson v. Mock,* 271 Minn. 393, 135 N.W.2d 892 (1965) (first cousin once removed of plaintiff but juror unaware of relationship).

■ Rule 26.02 provides the exclusive grounds to challenge for implied bias. *See Schoeb v. Cowles,* 279 Minn. 331, 333–34, 156 N.W.2d 895, 896–97 (1968) (construing Minn.Stat. § 631.31(2), the predecessor statute to Rule 26.02). Because Stufflebean has failed to show any actual bias or prejudice, failed to challenge for cause after completion of voir dire, and merely exhausted all preemptory strikes prior to reaching one of the challenged jurors, the appeal for a new trial based on the deprivation of an impartial jury must fail.

2. The cumulative effect of numerous instances of claimed prosecutorial misconduct during closing argument is claimed to have resulted in denial of a fair trial. The challenged comments made during closing argument include the statement that "evil * * * triumphs * * * because good men do nothing," reference to the fact that the state cannot appeal a verdict, the statement that only in Minnesota is the state prohibited from rebutting defendant's closing argument, and references to defendant's promiscuity and loose morals. Objection is also made to the prosecutor's statements regarding burden of proof. Stufflebean made only one objection during the closing argument. This objection occurred very early in the argument and took issue with the prose-cutor's analogy to traffic violations as to burden of proof. No other objections were made and no curative instructions were requested. Stufflebean claims that his legal advisor advised him not to object during final argument.

■ This court has recently held that failure to object or seek curative instructions constitutes a forfeiture of defendant's right to have this issue considered on appeal. *State v. Kline,* 306 N.W.2d 132 (Minn. 1981). A strict application of the rule is not appropriate here, however. The defendant was not represented by counsel. The misconduct must be evaluated to determine whether it was so serious that the trial court should have intervened *sua sponte* to keep the argument within permissible bounds. *State v. Wahlberg,* 296 N.W.2d 408, 420 (Minn.1980).

The test here is whether the misconduct likely played a substantial part in influencing the jury to convict. *State v. Caron,* 300 Minn. 123, 127, 218 N.W.2d 197, 200 (1974). Close examination of the prosecutor's closing argument does not reveal conduct that caused defendant to suffer sufficient prejudice to justify reversal. *See State v. Van Alstine,* 305 Minn. 276, 232 N.W.2d 899 (1975).

■ Conduct found by this court to be so prejudicial as to justify *sua sponte* intervention by the trial court was far more serious than present here. *See State v. White,* 295 Minn. 217, 203 N.W.2d 852 (1973); *State v. Perry,* 274 Minn. 1, 142 N.W.2d 573 (1966); *State v. Haney,* 222 Minn. 124, 23 N.W.2d 369 (1946). The closing argument was technically improper. It argued for conviction based, in part, on Stufflebean's character and past acts, rather than on the acts charged in the complaint. The cumulative effect of the prosecutor's improper arguments, however, is not so inflammatory or prejudicial that reversal is warranted. The improprieties were not dwelled on at any length, the prosecutor himself stressed that the jury's verdict was to be based only on the evidence, and the trial judge, in his discretion, did not deem the argument so improper as to require curative instructions

or *sua sponte* intervention during the argument.

In addition, the evidence was sufficient to support a finding of defendant's guilt, a necessary element in determining whether the prosecutor's final argument was so prejudicial as to constitute grounds for a new trial. *See State v. Kelley,* 295 N.W.2d 521 (Minn.1980); *State v. West,* 285 Minn. 188, 173 N.W.2d 468 (1970).

3. Stufflebean points to several specific instances of inconsistent testimony to argue perjury and conspiracy. The claim is simply unfounded.

The complainant testified that Stufflebean had forced penetration. Stufflebean seizes on evidence that penetration was physically impossible to assert that the victim lied in her testimony. He also asserts that because she stated that she had been raped when she first contacted the police, she must have been lying, again because of the physical impossibility of penetration. The examining doctor testified, however, that some limited penetration was possible in spite of the victim's physical abnormality. The rest of the argument points to other inconsistencies said to establish a conspiracy.

This court has recognized that inconsistencies and conflicts in some particular area between one state witness and another do not constitute false testimony nor any basis for reversal. "They are a sign of the fallibility of human perception—not proof that false testimony was given at trial." *State v. Hanson,* 286 Minn. 317, 335, 176 N.W.2d 607, 618 (1970). This is especially true when the testimony goes to the particulars of a traumatic and extremely stressful incident. The victim's testimony, when taken as a whole, was consistent. It certainly did not evince an attempt to commit perjury.

The evidence before the jury clearly supports the verdict. Even if the testimony claimed to constitute an attempt to frame him is disregarded, that still leaves the testimony of the victim and the police officer who took her statements and investigated the complaint. The jury did not accept Stufflebean's version of the incident. There is no basis upon which to disregard the jury's verdict.

4. Stufflebean was adjudged guilty of both fourth-degree criminal sexual conduct and attempted third-degree criminal sexual conduct. The trial judge imposed sentence on the fourth-degree charge only, finding that both charges arose from a single course of conduct. Stufflebean is entitled to vacation of the attempt conviction pursuant to Minn.Stat. § 609.04 (1980) and *State v. Koonsman,* 281 N.W.2d 487 (Minn.1979).

Section 609.04 provides in part:

Upon prosecution for a crime, the actor may be convicted of either the crime charged or an included offense, but not both. An included offense may be any of the following:

(1) A lesser degree of the same crime; or

(2) An attempt to commit the crime charged; or

(3) An attempt to commit a lesser degree of the same crime.

The convictions in the instant case do not fit the statute precisely. Here, Stufflebean was convicted of the crime charged (fourth-degree criminal sexual conduct) and of an attempt to commit a higher degree of the same crime (third-degree criminal sexual conduct).

In *Koonsman,* however, this court ordered that three of four criminal sexual conduct convictions be vacated. Defendant had been convicted of two counts of third-degree and two counts of fourth-degree criminal sexual conduct. 281 N.W.2d at 489. The court stated, "Allowing all four convictions to stand would violate the principles expressed in § 609.04 and would unfairly exaggerate the criminality of defendant's conduct." *Id.* at 489–90. *Koonsman* requires vacation of the attempt count here. Both counts concededly arose out of a single course of conduct. The sentence for each count is the same. Therefore, since Stufflebean has already been sentenced on the

fourth-degree charge, the attempt charge is hereby vacated.

Affirmed as modified.