# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A14-0718

State of Minnesota,
Respondent,

vs.

Larry Leo Geleneau, Jr.,
Appellant.

**Filed December 21, 2015**
**Affirmed**
**Johnson, Judge**

Otter Tail County District Court
File No. 56-CR-13-714

Lori Swanson, Attorney General, Karen B. Andrews, Assistant Attorney General, St. Paul, Minnesota; and

David J. Hauser, Otter Tail County Attorney, Fergus Falls, Minnesota (for respondent)

Mary Moriarty, Hennepin County Public Defender, Paul J. Maravigli, Assistant Public Defender, Minneapolis, Minnesota (for appellant)

Considered and decided by Kirk, Presiding Judge; Johnson, Judge; and Bjorkman, Judge.

## S Y L L A B U S

This court will not consider whether a district court erred by not striking a juror for cause *sua sponte* if the appellant expressly waived the right to challenge the juror for cause.

## O P I N I O N

**JOHNSON**, Judge

An Otter Tail County jury found Larry Leo Geleneau Jr. guilty of criminal sexual conduct based on evidence that he sexually abused a child for more than three years. On appeal, he argues that the district court erred by not dismissing two prospective jurors for cause *sua sponte*. He also argues that he received ineffective assistance of counsel because his trial counsel did not attempt to remove the two prospective jurors from the venire panel, either by asserting a challenge for cause or by exercising a peremptory strike. We conclude that appellate review of Geleneau's first argument is precluded by his trial counsel's express waiver of Geleneau's right to challenge the prospective jurors for cause. We also conclude that Geleneau has failed to show that his trial counsel's performance fell below an objective standard of reasonableness. Therefore, we affirm.

## FACTS

In 2006, Geleneau's sister-in-law lost custody of her young daughter. The girl subsequently lived in a series of four or five foster homes. In August 2009, the girl, who then was ten years old, moved into the home that Geleneau shared with his wife and two children. Between December 2012 and February 2013, a school counselor and one of the girl's friends reported that Geleneau had sexually abused the girl. The girl moved to another foster home.

In March 2013, the state charged Geleneau with three counts of first-degree criminal sexual conduct, in violation of Minn. Stat. § 609.342, subds. 1(a), 1(g), 1(h)(iii) (2012); three counts of second-degree criminal sexual conduct, in violation of Minn. Stat.

2

§ 609.343, subds. 1(a), 1(g), 1(h)(iii) (2012); one count of third-degree criminal sexual conduct, in violation of Minn. Stat. § 609.344, subd. 1(b) (2012); and one count of fourth-degree criminal sexual conduct, in violation of Minn. Stat. § 609.345, subd. 1(b) (2012).

The case went to trial in November 2013. At the beginning of jury selection, the district court assembled a venire panel of 22 persons. The district court began voir dire by questioning all prospective jurors in the courtroom. The district court and counsel also questioned a few prospective jurors in private, outside the presence of other prospective jurors.

J.T. was among the prospective jurors whom the district court and counsel questioned in private, in the jury room. J.T. had disclosed in a written answer to a jury questionnaire that her son had been physically or sexually abused. In response to questions asked by the district court, J.T. revealed that, in 1983, her then-husband was convicted of the "same charges" involving a four-year-old victim, who was the husband's son and J.T.'s stepson. J.T. expressed her belief that her former husband also abused her son from a prior relationship. In addition, J.T. stated that someone once posted photographs of her then-six-year-old granddaughter on the internet. J.T. expressed anger about the situation because, she said, it caused J.T.'s son, the father of the girl, to receive a change in his military assignment and subsequently to be deployed overseas.

The district court asked counsel whether they had any questions for J.T. Counsel for both parties initially declined. The prosecutor said to the district court, "I'll leave it to your discretion." The district court responded by saying, "I leave it to counsel."

3

Geleneau's trial counsel commented that "I struggle to hear the connection between the experience described and this particular case" but that J.T. was "clearly upset about a related situation," namely, her son's reassignment and deployment after photographs of his daughter were posted on the internet. Counsel for the parties suggested that J.T.'s suitability for jury service depended on whether her anger about "a related situation" would "cloud[] her judgment" or whether she could set aside the experiences she mentioned, follow the district court's instructions, and fairly evaluate the evidence. The district court asked J.T. additional follow-up questions concerning whether she could set aside her experiences and be a fair and impartial juror. Geleneau's trial counsel then asked J.T. additional follow-up questions of the same type. After both counsel declined the opportunity for further questions, J.T. was asked to report to the courtroom at a later time.

When the prospective jurors were gathered in the courtroom, Geleneau's trial counsel asked D.G. whether he believed that the criminal justice system is fair, and D.G. answered in the affirmative. Geleneau's trial counsel also questioned D.G. about one of his written answers on the jury questionnaire, in which he had disclosed that his father-in-law worked at, and his son had attended, a summer camp at which a volunteer had committed a sex-based offense against another child. Geleneau's trial counsel elicited information from D.G. to the effect that his son had not been harmed by the volunteer. Geleneau's trial counsel also took the opportunity to ask J.T. some additional follow-up questions concerning whether she would "have . . . a difficult time" serving as a juror and whether she would "hold it against" either party if she were required to serve. After

4

Geleneau's trial counsel had an opportunity to question all prospective jurors, he stated, "That's all the questions I have this afternoon. I pass for cause, Your Honor."

The district court then gave the prosecutor an opportunity to question the prospective jurors. The prosecutor asked D.G. whether he could set aside the fact that she also served as the prosecutor in a criminal case concerning the volunteer at the summer camp, and D.G. answered in the affirmative. The prosecutor asked J.T. some additional questions about her prior contact with victims of child sexual abuse when she worked as a volunteer in a chemical-dependency-rehabilitation program. After the prosecutor had the opportunity to question all prospective jurors, she stated, "Your Honor, I believe I'll pass the jurors for cause."

Throughout voir dire, the district court dismissed seven prospective jurors for cause *sua sponte*. The district court replaced each dismissed prospective juror by adding another person to the venire panel. At the end of voir dire, the prosecutor and Geleneau's trial counsel used their respective allotments of peremptory strikes. *See* Minn. R. Crim. P. 26.02, subd. 6. Ultimately, the district court seated twelve jurors, including J.T. and D.G., and two alternate jurors.

During the evidentiary phase of trial, the state called eight witnesses: the girl; two employees of the county's child-protection program; a physician associated with a child-abuse advocacy center who had examined the girl; two deputy sheriffs; and two forensic scientists employed by the Bureau of Criminal Apprehension. The girl testified that Geleneau required her to engage in sexual contact on numerous occasions. Specifically, the girl testified that Geleneau touched her buttocks, vagina, and breasts; inserted his

5

penis into her mouth; and inserted his penis into her anus. The girl testified that Geleneau's sexual abuse occurred "[a] lot," starting shortly after she moved into Geleneau's home and concluding only when she moved out. She testified that she did not tell anyone about the abuse because she was afraid. The girl's testimony was corroborated in part by one of the forensic scientists, who testified that Geleneau's DNA was found on the girl's underwear.

Geleneau testified in his own defense. He denied having any sexual contact with the girl. He suggested that she had fabricated the allegations of sexual abuse in an effort to be returned to her mother. He also implied that the girl fabricated the DNA evidence by retrieving from a wastebasket a condom that he and his wife had used. Geleneau also called four other witnesses: his wife, his two daughters, and a co-worker.

The jury found Geleneau guilty on all counts. In January 2014, the district court imposed a sentence of 144 months of imprisonment on count 3. Geleneau filed a timely notice of appeal and then asked this court to stay the direct appeal to allow him to seek postconviction relief. This court granted the stay. *See* Minn. R. Crim. P. 28.02, subd. (4).

In November 2014, Geleneau filed a postconviction petition in which he alleged that his trial counsel had provided him with ineffective assistance by not seeking to remove two prospective jurors whom he alleged were biased, including J.T. In February 2015, the district court denied the petition without an evidentiary hearing. In March 2015, this court dissolved the stay and reinstated the appeal.

**ISSUES**

I.      Did the district court err by not dismissing two prospective jurors for cause *sua sponte*?

II.      Has Geleneau established that his trial counsel provided ineffective assistance of counsel by not seeking to remove two prospective jurors from the venire panel, either by asserting challenges for cause or by using peremptory strikes?

**ANALYSIS**

**I.**

Geleneau first argues that the district court erred by not dismissing two prospective jurors for cause *sua sponte*. Specifically, Geleneau argues that the district court should have dismissed J.T. and D.G. for cause because their answers to the written jury questionnaire and their answers to questions during voir dire revealed biases that justify dismissal for cause.

**A.**

The Sixth Amendment to the United States Constitution provides, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . ." U.S. Const. amend. VI; *see also* Minn. Const. art. I, § 6. The right to an impartial jury also is based on a defendant's right to due process of law. *Irvin v. Dowd*, 366 U.S. 717, 722, 81 S. Ct. 1639, 1642 (1961). The bias of even a single juror violates a defendant's constitutional rights because "the impartiality of the adjudicator goes to the very integrity

of the legal system." *State v. Fraga*, 864 N.W.2d 615, 623 (Minn. 2015) (quotation omitted).

In Minnesota, parties may remove a prospective juror who is not impartial pursuant to rule 26.02, subdivision 5, of the Minnesota Rules of Criminal Procedure. The rule provides 11 grounds on which a juror may be challenged for cause. Minn. R. Crim. P. 26.02, subd. 5(1). Among them is the situation in which a prospective juror's "state of mind . . . satisfies the court that the juror cannot try the case impartially and without prejudice to the substantial rights of the challenging party." Minn. R. Crim. P. 26.02, subd. 5(1)1. The party challenging a prospective juror on this ground has the burden of establishing that the prospective juror has "actual bias" toward the case or a party. *State v. Munt*, 831 N.W.2d 569, 577 (Minn. 2013). To satisfy that burden, the challenging party must show more than "'the mere existence of any preconceived notion as to the guilt or innocence of an accused'"; the challenging party must show a "'strong and deep impression[]' that would prevent [the prospective juror] from lay[ing] aside [an] impression or opinion.'" *Id.* (quoting *Irvin*, 366 U.S. at 722-23 & n.3, 81 S. Ct. at 1642-43 & n.3).

To determine whether a juror is biased, courts engage in a two-step process. *Fraga*, 864 N.W.2d at 623. First, the court must determine whether the juror expressed actual bias. *Id.* Second, the court must determine whether the juror was properly rehabilitated, which occurs if the juror states unequivocally that he or she will follow the district court's instructions and will set aside any preconceived notions and fairly evaluate the evidence. *Id.* If a district court has ruled on a for-cause challenge to a

8

prospective juror, an appellate court gives "'great deference to a district court's findings of fact' regarding juror bias . . . and review[s] a district court's decision to seat a juror for abuse of discretion." *Id.* (quoting *Munt*, 831 N.W.2d at 577).

**B.**

Before considering the substance of Geleneau's argument, we must consider the state's argument that Geleneau "has waived his right to" challenge the jurors' impartiality on appeal. The state's argument is based on the fact that Geleneau's trial counsel did not challenge J.T. or D.G. for cause. In fact, Geleneau's trial counsel affirmatively stated that he did not wish to challenge any prospective juror for cause.

The state's argument is consistent with supreme court caselaw. In *State v. Thieme*, 281 Minn. 47, 160 N.W.2d 396 (1968), the supreme court declined to consider the appellant's biased-juror argument because the "defendant, after consultation with his counsel, chose to make no . . . challenge" to the juror. *Id.* at 51, 160 N.W.2d at 398. The supreme court reasoned that "[i]t is too late to raise this issue now" because to allow appellate review "would extend an invitation to every defendant to leave unchallenged an objectionable juror only to raise the objection upon appeal." *Id.* Since *Thieme*, neither the supreme court nor this court has considered a case in which an appellant sought to establish juror bias on appeal after trial counsel had expressly declined to assert a for-cause challenge. *Cf. State v. Hanson*, 286 Minn. 317, 331-32, 176 N.W.2d 607, 616 (1970) (declining to consider biased-juror argument on appeal because "challenge for cause . . . was not exercised" at trial, "[f]or reasons which we must presume to have been adequate").

9

We are mindful of the fact that the *Thieme* opinion predates the promulgation of the rules of criminal procedure. *See In re Proposed Rules of Criminal Procedure*, No. 45517 (Minn. Feb. 26, 1975) (order). Nonetheless, it appears that *Thieme* retains its vitality. Even after the rules of criminal procedure took effect, the supreme court continued to insist on the preservation of a biased-juror argument. In *State v. Stufflebean*, 329 N.W.2d 314 (Minn. 1983), the supreme court stated that an appellant making a biased-juror argument "must show [1] that the challenged juror was subject to challenge for cause, [2] that actual prejudice resulted from the failure to dismiss,[1] and [3] *that appropriate objection was made by appellant*." *Id.* at 317 (emphasis added). This excerpt demonstrates that an objection is necessary for appellate relief, which implies that the absence of an objection in the district court is a sufficient basis for rejecting a biased-juror argument on appeal. *See id.* The requirement that a defendant make a for-cause challenge in the district court before making a biased-juror argument on appeal is consistent with the principle that the district court is in the best position to determine whether a prospective juror can be an impartial juror because the district court can assess the prospective juror's demeanor and credibility during voir dire. *See Logan*, 535 N.W.2d at 323; *State v. Drieman*, 457 N.W.2d 703, 708-09 (Minn. 1990).

---

[1]Subsequent supreme court opinions have clarified the second part of this statement by explaining that an appellant need not demonstrate actual prejudice in the sense that a biased juror caused a result that otherwise would not have obtained; rather, the presence of a biased juror is a structural error that requires a new trial, without any inquiry into the consequences of the biased juror's participation. *See Fraga*, 864 N.W.2d at 625-26 (citing *Holt v. State*, 772 N.W.2d 470, 477 (Minn. 2009), *State v. Williams*, 593 N.W.2d 227, 238 (Minn. 1999), and *State v. Logan*, 535 N.W.2d 320, 324 (Minn. 1995)).

10

In addition, this court previously has stated that a district court has no duty to dismiss a juror for cause *sua sponte*.  In *State v. Gillespie*, 710 N.W.2d 289 (Minn. App. 2006), the district court specifically asked the *pro se* defendant at the conclusion of voir dire whether he was passing his opportunity to assert a for-cause challenge, and the defendant responded by saying, "Yes, oh yes."  *Id.* at 292-93.  On appeal, the defendant-appellant argued that "the district court committed plain error by failing to strike sua sponte" two prospective jurors.  *Id.* at 296.  This court decided the appeal by emphasizing a defendant's opportunity to challenge a biased juror for cause pursuant to rule 26.02, subdivision 5(1); by essentially presuming that the absence of such a challenge is due to strategic reasons; and by suggesting that a district court might commit plain error if it were to intervene in jury selection by striking a juror for cause *sua sponte*.  *Id.*  In the alternative, we analyzed the appellant's argument on the merits, assuming without deciding that a district court may have a duty to dismiss a juror for cause *sua sponte*, and we rejected the appellant's argument on the merits as well.  *Id.* at 297.  But the primary basis of our decision was that the appellant was not permitted to make a biased-juror argument on appeal because he had not made such an argument at the conclusion of voir dire (and, in fact, had expressly disavowed such an argument).  *Id.* at 296.

Furthermore, the *Thieme* opinion is consistent with federal law.  A majority of the federal circuit courts of appeals will not consider a biased-juror argument if the appellant did not object to the allegedly biased juror during the jury-selection process.  *See United States v. Johnson*, 688 F.3d 494, 500-01 (8th Cir. 2012); *Dawson v. Wal-Mart Stores, Inc.*, 978 F.2d 205, 210 (5th Cir. 1992); *United States v. Joshi*, 896 F.2d 1303, 1307-08

(11th Cir. 1990); *United States v. Reis,* 788 F.2d 54, 59 (1st Cir. 1986); *United States v. Diaz-Albertini*, 772 F.2d 654, 657 (10th Cir. 1985); *United States v. Harris*, 530 F.2d 576, 579-80 (4th Cir. 1976); *United States v. Ragland*, 375 F.2d 471, 475 (2d Cir. 1967). Our research reveals only one federal circuit court opinion in which it is clear that the appellant expressly waived a for-cause challenge and asserted a biased-juror argument on appeal. In *United States v. Brazelton*, 557 F.3d 750 (7th Cir. 2009), the trial court specifically asked the appellant's trial counsel whether he wished to assert a for-cause challenge to a juror who was a relative of one of the government's witnesses. *Id.* at 752. Appellant's trial counsel "expressly declined," stating, "No, Your Honor." *Id.* On appeal, the appellant argued that the trial court erred by allowing the juror to serve. *Id.* at 753. The United States Court of Appeals for the Seventh Circuit refused to consider the argument on the ground that it had been waived. *Id.* at 754-55. The Seventh Circuit relied on the United States Supreme Court's opinion in *United States v. Olano. Id.* at 753 (citing *United States v. Olano*, 507 U.S. 725, 113 S. Ct. 1770 (1993)). The *Olano* opinion makes a distinction between "waiver" and "forfeiture" by stating that "forfeiture is the failure to make the timely assertion of a right," while "waiver is the intentional relinquishment or abandonment of a known right." 507 U.S. at 733, 113 S. Ct. at 1777 (quotation omitted).[2] The Seventh Circuit in *Brazelton* stated, "A more obvious intentional relinquishment of a known right . . . is hard to imagine." 557 F.3d at 753 (citing *Olano*, 507 U.S. at 733, 113 S. Ct. at 1777). The Seventh Circuit added, "If a

---

[2]Our supreme court also has noted and applied *Olano*'s distinction between forfeiture and waiver. *See State v. Beaulieu*, 859 N.W.2d 275, 278 n.3 (Minn. 2015); *State v. Jeffries*, 806 N.W.2d 56, 64 n.4 (Minn. 2011).

defendant is allowed to . . . forego challenges for-cause to a biased juror and then allowed to have the conviction reversed on appeal because of that juror's service, that would be equivalent to allowing the defendant to plant an error and grow a risk-free trial." *Id.* at 755 (quotation omitted).

## C.

In this case, the record reveals that, at the conclusion of voir dire, Geleneau's trial counsel stated, "That's all the questions I have this afternoon. *I pass for cause*, Your Honor." (Emphasis added.) Geleneau's trial counsel's statement indicates that Geleneau's counsel "chose to make no . . . challenge" to J.T. or D.G. *See Thieme*, 281 Minn. at 51, 160 N.W.2d at 398. In addition, Geleneau's trial counsel's statement relieved the district court of any obligation to dismiss any juror for cause *sua sponte*. *See Gillespie*, 710 N.W.2d at 296. Furthermore, Geleneau's trial counsel's statement reflects an "intentional relinquishment or abandonment of" the right to challenge a prospective juror for cause. *See Olano*, 507 U.S. at 733, 113 S. Ct. at 1777 (quotation omitted). Accordingly, Geleneau expressly waived his right to challenge prospective jurors J.T. and D.G. for cause. Because Geleneau waived that right, this court will not consider on appeal whether the district court erred by not dismissing J.T. and D.G. for cause *sua sponte*.[3]

---

[3]We need not consider whether an appellant may argue on appeal that a district court erred by not dismissing a prospective juror for cause *sua sponte* if the appellant merely forfeited the issue at trial without expressly waiving it. *See Beaulieu*, 859 N.W.2d at 278-79 (discussing plain-error rule generally); *Stufflebean*, 329 N.W.2d at 317 (requiring objection to prevail on appeal on biased-juror argument); *State v. Little*, 851 N.W.2d 878, 889 n.3 (Minn. 2014) (Stras, J., concurring in part, dissenting in part) ("It is

**II.**

Geleneau also argues that he was denied his right to the effective assistance of counsel because his trial counsel did not seek to remove J.T. or D.G. from the venire panel, either by asserting a challenge for cause or by using a peremptory strike.

"In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The right to the assistance of counsel includes the right to the *effective* assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 2063 (1984). To prevail on a claim of ineffective assistance of counsel, a petitioner "must affirmatively prove [1] that his counsel's representation 'fell below an objective standard of reasonableness' and [2] 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Gates v. State*, 398 N.W.2d 558, 561 (Minn. 1987) (quoting *Strickland*, 466 U.S. at 688, 694, 104 S. Ct. at 2064, 2068). In general, "there is a strong presumption that counsel's performance fell within a wide range of reasonable assistance." *Bruestle v. State*, 719 N.W.2d 698, 705 (Minn. 2006) (quotation omitted). "We give trial counsel wide latitude to determine the best strategy for the client." *State v. Nicks*, 831 N.W.2d 493, 506 (Minn. 2013). Thus, an attorney's

---

an open question in Minnesota whether unpreserved structural errors lead to the automatic reversal of a conviction."); *see also United States v. Mitchell*, 568 F.3d 1147, 1150 (9th Cir. 2009) (noting unsettled question whether plain-error rule applies to unpreserved claims of juror bias). Our analysis is limited to the procedural history of this case, in which Geleneau's trial counsel expressly stated that he did not wish to challenge any prospective juror for cause.

"strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066.

The deference that courts give to an attorney's strategic decisions is especially strong in matters of jury selection, which "depends heavily on counsel's experience, perception of and rapport with prospective jurors." *Jama v. State*, 756 N.W.2d 107, 114 (Minn. App. 2008). "Attorneys must make tactical decisions during jury selection, and a claim of ineffective assistance of counsel cannot be established by merely complaining about 'counsel's failure to challenge certain jurors or his failure to make proper objections.'" *Tsipouras v. State*, 567 N.W.2d 271, 276 (Minn. App. 1997), *review denied* (Minn. Sept. 18, 1997) (quoting *State v. Prettyman*, 293 Minn. 493, 494, 198 N.W.2d 156, 156 (1972) (quoting *State v. Russell*, 272 Minn. 463, 138 N.W.2d 690 (1965) (quotation marks omitted))). In *Prettyman*, the supreme court concluded that there was "no basis for second-guessing the experienced public defender's jury selection tactics as mistaken or improvident" given that voir dire revealed no bias and no grounds for removal for cause. 293 Minn. at 494, 198 N.W.2d at 158. Later, in *Dunn v. State*, 499 N.W.2d 37 (Minn. 1993), the supreme court concluded that trial counsel's decision to not seek to remove a prospective juror was not unreasonable in light of the fact that counsel questioned the prospective juror about a potential source of bias and, "satisfied that no real risk of bias existed, reasonably decided not to exercise a peremptory challenge against him." *Id.* at 38 (citing *Prettyman*, 293 Minn. at 494, 198 N.W.2d at 158). More recently, in *Williams v. State*, 764 N.W.2d 21 (Minn. 2009), the supreme court rejected an argument that trial counsel was ineffective for not seeking to remove a juror,

15

reasoning that "ineffectiveness is not established by complaining that counsel failed to challenge certain jurors unless the failure to challenge jurors essentially amounts to a denial of counsel." *Id.* at 30 (citing *Russell*, 272 Minn. at 465, 138 N.W.2d at 692). This court has held that an attorney's representation of a defendant in jury selection is below an objective standard of reasonableness only if the petitioner can prove:

> (1) that defense counsel was so inattentive or indifferent during the jury selection process that the failure to remove a prospective juror was not the product of a conscious choice or preference; (2) that a prospective juror expressed bias so strong or unequivocal that no plausible countervailing subjective preference could justify failure to remove that juror; or (3) that there is some other specific evidence clearly demonstrating that counsel's choice was not plausibly justifiable.

*Jama*, 756 N.W.2d at 114 (quoting *State v. Litherland*, 12 P.3d 92, 100 (Utah 2000)).

In this case, Geleneau argues on appeal that his trial counsel was ineffective for not seeking to remove two prospective jurors, J.T. and D.G., from the venire panel. Trial counsel's decision concerning J.T. was raised by Geleneau's postconviction petition; trial counsel's decision concerning D.G. was not. Thus, we will review the postconviction court's ruling with respect to J.T., and we will review the trial record with respect to D.G.

**A.**

A postconviction petition filed pursuant to chapter 590 of the Minnesota Statutes "shall contain . . . a statement of the facts and the grounds upon which the petition is based and the relief desired," and "[a]ll grounds for relief must be stated in the petition or any amendment thereof unless they could not reasonably have been set forth therein." Minn. Stat. § 590.02, subd. 1(1) (2014). "[T]he burden of proof of the facts alleged in the

16

petition shall be upon the petitioner to establish the facts by a fair preponderance of the evidence." Minn. Stat. § 590.04, subd. 3 (2014). To satisfy the burden of proof, a petitioner "must do more than offer conclusory, argumentative assertions, without factual support." *State v. Turnage*, 729 N.W.2d 593, 599 (Minn. 2007).

The postconviction court wrote a thorough and detailed order in which it rejected Geleneau's postconviction claim concerning prospective juror J.T. and the other prospective juror mentioned in Geleneau's petition. The relevant portion of the postconviction court's order states as follows:

> [A]fter a thorough review of the record and reflection upon the Court's thoughts and impressions at trial, the Court finds that the petition, files, and record conclusively show that Mr. Beitelspacher's decisions not to move to strike for cause, or peremptorily strike, the jurors at issue were objectively reasonable. Mr. Beitelspacher actively participated in the jury-selection process, questioning jurors and building rapport. He had the opportunity to interact with the jurors and acquire the sense of whether each was likely to be influential with other jurors or easily influenced. Contrary to Petitioner's assertions, Mr. Beitelspacher used all five of his peremptory strikes.
>
> The trial record indicates that Mr. Beitelspacher's choices not to move to strike, or strike, the jurors at issue were consistent with a strategic or tactical decision-making process, particularly in the case of [J.T.]. None of the jurors at issue strongly indicated a disqualifying bias and each of them indicated an intention to perform properly as jurors. At the time of trial, the victim in this matter was 13 years old, far older than the young victims described by [J.T.]. Based upon Mr. Beitelspacher's closing argument, the defense theory of the case involved: (1) a teenager who fabricated the sexual abuse and physical evidence in order to resume living with her mother; (2) an inadequate police investigation of potential physical evidence; (3) lack of medical evidence of penetration or injury; and (4) deficiencies with physical evidence

17

collected. Counsel had a 33-question juror questionnaire available for each potential juror, which provided additional information to help place the juror's oral statements in context. Mr. Beitelspacher demonstrated familiarity with questionnaire answers in his questioning of potential jurors.

Mr. Beitelspacher could reasonably have anticipated that [J.T.]'s experiences regarding sexual abuse would sharply contrast with the story of the alleged victim in this matter, potentially making her apt to hold the alleged victim's story to a higher level of scrutiny due to her age. He also could have reasonably anticipated that [J.T.] would expect more and better physical evidence due to her previous experiences. For example, there was photographic evidence of the abuse involving [J.T.]'s granddaughter. Mr. Beitelspacher knew that there was no similar evidence in this matter, and he planned to question the value of the arguably inconclusive DNA evidence and the lack of medical evidence in this matter.

All of the challenged jurors heard six other potential jurors who were questioned and found by the Court to be unfit to serve on the jury due to bias. Although they each expressed reservations, none of the challenged jurors stated that he/she could not serve as a juror under these standards. In the context of the full voir dire process, their responses show that it was reasonable for defense counsel both to not move to strike them for cause and, in the case of [J.T. and another prospective juror], to peremptorily strike other potential jurors.

On appeal, Geleneau does not argue that the postconviction court's factual findings are unsupported by the record. Instead, Geleneau essentially disregards the postconviction court's order and argues that the trial record supports different factual findings. In light of the deference that we must give to a postconviction court's findings of fact if they are supported by the record, *see Nicks*, 831 N.W.2d at 503-04, we have no basis for disturbing the postconviction court's conclusion that Geleneau's trial counsel

was not ineffective. In fact, our analysis of the relevant factors confirms the postconviction court's analysis. First, the postconviction court's order does not describe an attorney who was "inattentive or indifferent during the jury selection process" or whose decision to not seek to remove J.T. was not "the product of a conscious choice or preference." *See Jama*, 756 N.W.2d at 114. Rather, the postconviction court's order describes Geleneau's trial counsel as well prepared and engaged. Second, the trial record does not indicate that J.T. "expressed bias so strong or unequivocal that no plausible countervailing subjective preference could justify failure to remove that juror." *See id.* During voir dire, both counsel and the district court were more concerned about her anger about her son's military reassignment and deployment, not about her attitudes concerning persons who are accused of sexually abusing children. In addition, the postconviction court identified reasons why J.T. might be a favorable juror for the defense. Third, there is no "other specific evidence clearly demonstrating that counsel's choice was not plausibly justifiable." *See id.* This simply is not one of those rare cases in which a postconviction petitioner can prove that trial counsel was ineffective in not seeking to remove a prospective juror.

Geleneau argues in the alternative that the postconviction court erred by denying his postconviction petition without conducting an evidentiary hearing. A postconviction petition may be denied without an evidentiary hearing if the petition, files, and record conclusively show that the petitioner is entitled to no relief. Minn. Stat. § 590.04, subd. 1 (2014). An evidentiary hearing should be held if "material facts are in dispute that . . .

must be resolved in order to determine the issues raised on the merits." *Voorhees v. State*, 627 N.W.2d 642, 648 (Minn. 2001) (quotation omitted) (alteration in original).

In this case, the petition and the accompanying affidavits submitted by Geleneau do not contain facts that, if proved to be true, would allow him to satisfy the *Strickland* test. In Geleneau's affidavit, the most pertinent allegation is that "he adamantly told his trial attorney to strike [J.T.], but he did not do so." But Geleneau does not argue on appeal that an attorney representing a criminal defendant is obligated to allow the defendant to make decisions concerning which prospective jurors to keep or strike, and we are aware of no such caselaw. Accordingly, Geleneau's allegation does not overcome the principle that courts are deferential toward the well-considered strategic decisions of trial counsel. *See Strickland*, 466 U.S. at 690-91, 104 S. Ct. at 2066; *Nicks*, 831 N.W.2d at 506; *Bruestle*, 719 N.W.2d at 705. Geleneau also submitted an affidavit of an experienced criminal defense attorney, but that attorney was familiar with the case only to the extent that he had reviewed a three-page summary of the transcript of voir dire, which had been prepared by postconviction counsel. Accordingly, the opinions offered by the experienced criminal defense attorney are incapable of proving that the strategic decisions of trial counsel, who was present in the courtroom and undoubtedly had multiple sources of information about the prospective jurors, were below an objectively reasonable standard of performance. Given the applicable law and the facts alleged by Geleneau, an evidentiary hearing would not have allowed him to prove his ineffectiveness claim with respect to prospective juror J.T.

20

**B.**

Because Geleneau did not include any allegations in his postconviction petition with respect to D.G., we will consider that part of his ineffectiveness argument as part of his direct appeal by reviewing the trial record.

D.G.'s statements in voir dire do not reveal any basis for a challenge for cause. D.G. made a written comment in response to the jury questionnaire that cases involving sexual abuse of a child are "the worst" type of case, but that comment does not exhibit a "strong and deep impression[]" that he could not "lay aside his impression or opinion and render a verdict based on the evidence." *Irvin*, 366 U.S. at 722-23 & n.3, 81 S. Ct. at 1642-43; *see also Munt*, 831 N.W.2d at 577. In addition, D.G. made clear during voir dire that he could set aside his feelings about a related incident, and he expressed faith in the jury system. In light of this record, there is no basis for concluding that Geleneau's trial counsel's decision to not seek to remove D.G. from the venire panel was below an objective standard of reasonableness. *See State v. Caldwell*, 803 N.W.2d 373, 386-87 (Minn. 2011) (concluding that appellant failed to rebut presumption that trial counsel's performance was reasonable during voir dire because trial counsel was well prepared, asked questions of prospective jurors, and challenged several jurors for cause).

## DECISION

We will not consider Geleneau's argument that the district court erred by not dismissing two prospective jurors for cause *sua sponte* because Geleneau expressly waived his right to assert a challenge for cause. Geleneau's trial counsel did not provide

ineffective assistance by not seeking to remove prospective jurors J.T. and D.G. from the venire panel.

**Affirmed.**