*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0304**

State of Minnesota,
Respondent,

vs.

Kevin Ray Goulet,
Appellant.

**Filed February 21, 2017
Affirmed
Jesson, Judge, Judge
Dissenting, Ross, Judge**

Otter Tail County District Court
File No. 56-CR-15-2128

Lori Swanson, Attorney General, St. Paul, Minnesota; and

David Hauser, Otter Tail County Attorney, Fergus Falls, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Roy G. Spurbeck, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Jesson, Presiding Judge; Ross, Judge; and Schellhas, Judge.

**U N P U B L I S H E D   O P I N I O N**

**JESSON**, Judge

Appellant Kevin Goulet argues that the district court committed reversible error by refusing to strike a juror for cause because the juror displayed actual bias when she

expressed that she did not know whether she could be fair and impartial in a case involving children, and the district court's questioning did not rehabilitate her. Because Goulet has failed to establish actual bias, and the district court's questioning rehabilitated the juror with respect to any possible bias, we affirm.

**FACTS**

From June 2013 through June 2014, Goulet was living in Fergus Falls. During that time, he lived initially in the home of his niece, J.C., then in his own apartment, and finally in the garage of J.C.'s next home. J.C.'s child, T.S., who was then seven years old, sometimes spent time alone with Goulet.

After Goulet moved out of J.C.'s garage, J.C. discovered a pair of T.S.'s panties in a mini-fridge belonging to Goulet. J.C. then heard T.S. playing with her twin brother and telling him, "Let me see your naked booty." J.C. was concerned, and T.S. told her mother that Goulet had sexually touched her. J.C. reported the suspected abuse to police. T.S. was interviewed by a social worker and disclosed in the interview that Goulet had sexually penetrated her on a number of occasions.

The state charged Goulet with first-degree and second-degree criminal sexual conduct. During jury selection for Goulet's trial, potential jurors were asked to fill out a jury questionnaire. One question asked whether the potential juror would find it hard to be fair and impartial in considering evidence if asked to serve on a case involving charges of criminal sexual conduct. One potential juror, K.J., answered "Yes." She commented, "Anything done to a young child would be very hard to deal with."

At voir dire, defense counsel questioned K.J.:

Q: You're going to have some trouble, you think, sitting in this — this trial; is that right?

A: I think I might, yes.

Q: Okay. Tell me about that.

A: Well, I work at the school. I'm with kids during [the] school day. It's — I just—I guess that's why.

Q: What ages are the children in the school where you work?

A: They're fifth through eighth grade.

. . . .

A: Uh-huh. I work in the kitchen.

Q: And when you say that, what exactly will give you problems with it? Just because you work with children?

A: I don't know. We're raising three grandsons also; and, I don't know, I just think children should be innocent children and . . .

Q: Okay. You think children should be innocent.

A: Uh-huh.

Q: So you have already made up your mind then—

A: I don't think so, no.

Q: — in this?

A: I don't think so.

Q: Do you think that just because Mr. Goulet's sitting there then and that there's a child involved that he must have done something?

A: I think I can be open to listening to everything. And judging by that.

Q: Do you think your sympathy — well, let me rephrase that. Would you give more weight to what a child says than anything else?

A: Maybe.

Q: So if the child says this and somebody else says this, you've already decided, "I'll probably believe that child over anybody else?"

A: I don't know. I can't really — I just don't really know how to answer. All I know is I think I would have a hard time doing it.

Q: You think you could put that aside then and not give that child more weight to her evidence? Or her testimony?

A: I might be able to. But I don't know.

Q: You don't really know?

A: I don't really know.

Q: So you can't say for sure, "I can set that aside and be fair."

A: I can't say for sure, no.

Q: How do you think your sympathy for children is going to affect how you feel about the evidence?

A: I don't know. I'd be willing to listen to everything. And judge from that.

Q: Okay. I hear you saying, "I'll be willing to listen to everything and judge from that"; but you also said, "I don't believe I can put it aside."

A: Maybe not completely. I don't know.

3

Q: Not completely.  So you can't say for sure that you can put all this aside and just judge like we're on an even — we're not even on an even playing field.  He's presumed innocent; the State has to overcome that.
A: Uh-huh.
Q: And you're already kind of giving the State not the even — you're giving them more than an even playing field; would you agree?
A: Maybe.
Q: Thank you.  This is hard.  I know.
A: It is very hard.

Defense counsel asked to have K.J. removed for cause.  The prosecutor then inquired of

K.J.:

Q: . . . [T]he judge will give instructions in that regard; do you understand?
A: Uh-huh.  I understand.
Q:  And if the judge tells you today and throughout the trial that you need to listen to the facts and judge this case based on that, are you going to be able to do that?
A: I think so.
Q: And you're going to — you come here, obviously, with your preconceived notions or your life experiences that you talked about; right? You see kids every day.
A: Yes.
Q: Is that where your struggle is coming from; just that you see them? Or have you had some experience with a particular child?
A: No.  Because I'm with them during the day, and raising three grandsons, which —
Q: How old are they?
A: 10, 12, and 17.
Q: And so it's that that you're coming into saying it would be difficult from your questionnaire?
A: Yes.
Q: Nothing different from that?
A: No.
Q: All right. And so, with that, if the judge — it is your job to decide this case, the facts, and to look at all of the factors about weighing somebody's credibility.  Will you look at those and follow the instructions of the Court without just saying, "Well, I believe this person more than the other because I like kids," or whatever it is that you have in your mind now?
A: Right. I think I can, yes.
Q: All right.  You're going to do your best to do that?
A: Yes, I will do my best.

4

The prosecutor opposed the motion to remove K.J. for cause. Defense counsel stated that she was renewing the objection because K.J. stated that she would do her best, but also said that "she couldn't put it aside." The district court then further questioned K.J.:

> Q: Ma'am, at the end of this, if you're chosen as a juror, you will be asked to listen to the evidence as it comes in, not decide any case on anything else, other than the evidence that you hear; and then listen to the law as I give it to you and make your findings, you know, as to the—based solely on the evidence that you're hearing, putting aside all sympathy and prior feelings and applying the law as I give it to you. Do you think you can do that?
> A: I think so.

The district court then ruled that it would deny the challenge for cause, and K.J. was seated as a juror.

The jury found Goulet guilty of seven counts of criminal sexual conduct, and the district court sentenced him to 144 months in prison. This appeal follows.

### D E C I S I O N

The United States and Minnesota Constitutions guarantee a criminal defendant the right to a fair trial by an impartial jury. U.S. Const. amend. VI; Minn. Const. art I, § 6. The Minnesota Rules of Criminal Procedure provide that a party may seek to have a prospective juror removed on one of several grounds, including that "[t]he juror's state of mind . . . satisfies the court that the juror cannot try the case impartially and without prejudice to [that party's] substantial rights." Minn. R. Crim. P. 26.02, subd. 5(1). If a juror is actually biased and sits in judgment, a structural error has occurred, which requires a new trial. *State v. Fraga*, 864 N.W.2d 615, 626 (Minn. 2015); *State v. Geleneau*, 873 N.W.2d 373, 380 n.1 (Minn. App. 2015), *review denied* (Minn. Mar. 29, 2016). No

5

additional showing of prejudice is necessary. *Fraga*, 864 N.W.2d at 625-26. A defendant may raise this issue on appeal even if he did not use a peremptory challenge to remove a juror who, he argues, should have been removed for cause. *See United States v. Martinez-Salazar*, 528 U.S. 304, 314-15, 120 S. Ct. 774, 781 (2000).

Goulet challenges the district court's failure to remove K.J. for cause, arguing that she expressed a state of mind showing actual bias. *See State v. Munt*, 831 N.W.2d 569, 577 (Minn. 2013). Establishing that a prospective juror expressed actual bias requires more than the existence of a preconceived notion as to the defendant's innocence or guilt. *Id*. Rather, the challenging party must show that the juror has "exhibited strong and deep impressions that would prevent [the juror] from lay[ing] aside [an] impression or opinion and render[ing] a verdict based on the evidence presented." *Id*. (quotation omitted).

To determine whether a juror is biased, we follow a two-step process. *Fraga*, 864 N.W.2d at 623. We first examine a juror's voir dire answers in context to determine whether the juror has expressed actual bias. *Id*. If a juror expressed actual bias, we then determine whether the juror was rehabilitated. *State v. Prtine*, 784 N.W.2d 303, 310 (Minn. 2010).[1] Rehabilitation occurs if the juror states unequivocally that he or she will set aside any preconceived notions, follow the district court's instructions, and fairly evaluate the evidence. *Id*. We give "great deference to a district court's findings on juror bias" and will not reverse the denial of a challenge for bias unless the district court has abused its

---

[1] If a juror's statements establish bias based on race, such a bias may be so strong that it is not subject to rehabilitation. 8 Henry W. McCarr & Jack S. Nordby, *Minnesota Practice* § 27:9 n.18 (4th ed. 2012) (citing *State v. Brown*, 732 N.W.2d 625 (Minn. 2007)). Because racial bias is not implicated in this case, we do not reach this issue.

6

discretion. *Fraga*, 864 N.W.2d at 623; *see also State v. Logan*, 535 N.W.2d 320, 323 (Minn. 1995) (stating that the question of whether a juror is impartial amounts to a credibility determination, and an appellate court defers to the district court's finding of impartiality).

Goulet argues that the district court erred by declining to remove K.J. for cause because she expressed actual bias and was not rehabilitated. In our review of this issue, we examine other cases in which Minnesota appellate courts have concluded that the district court erred by declining to strike a juror for cause based on actual bias. For instance, in *Fraga*, the supreme court concluded that the district court committed reversible error by seating a juror on a case involving the murder of a child who had been sexually abused. *Fraga*, 864 N.W.2d at 624-25. That juror was familiar with the case, had read press about it, and had discussed case details with a family member who was an emergency-room nurse where the victim was treated. *Id*. at 623. When asked if he could put this aside, be fair and impartial, and decide the case solely on the evidence presented, he answered equivocally, including references to his prior knowledge of the case and his discussion of the nature of the case with family and friends. *Id*. at 624. The supreme court concluded that the juror displayed actual bias and was not rehabilitated. *Id*. at 624-25; *see also Prtine*, 784 N.W.2d at 311 (holding that the district court erred by declining to strike a juror for cause when she repeatedly expressed that she "would be more inclined to believe a police officer's testimony.").

Here, K.J. expressed hesitation about serving on a jury involving a crime committed against a child and initially gave equivocal answers as to whether she would believe a child

7

over another witness. But she acknowledged that her hesitation stemmed only from raising her three grandchildren; she did not indicate prior familiarity with the details of the case, as in *Fraga*, or express a strong bias in favor of a certain group, as in *Prtine*. And when questioned by the prosecutor whether she could follow the district court's instructions, she stated, "Right. I think I can, yes." On this record, we cannot conclude that she expressed actual bias in the form of deep-seated impressions that would prevent her from putting aside her opinion and rendering a verdict based on the evidence. *See Munt*, 831 N.W.2d at 577.

Further, even if K.J. did express some degree of actual bias, the district court's additional questioning rehabilitated her. Rehabilitation occurs if a juror states unequivocally that he or she will follow the district court's instructions and fairly evaluate the evidence, setting aside any preconceived notions. *Fraga*, 864 N.W.2d at 623. Here, the district court informed K.J that if chosen as a juror, she would be asked to "put[] aside all sympathy and prior feelings," listen to evidence and the law as instructed by the court, and decide the case only based on that evidence, applying the law as given. The district court then asked her directly. "Do you think you can do that?" She answered, "I think so."

K.J.'s positive response to the district court is less equivocal than the potential juror's response in *Fraga* that he "guess[ed]" he could form his own opinion and be impartial. *See id*. at 625. In addition, K.J.'s initial expression of hesitancy stemmed only from her general belief that children were often truthful. It did not reflect a deep-seated bias that would prevent her from laying her views aside and rendering a verdict based only on the evidence. *Munt*, 831 N.W.2d at 577. Thus, the strength of rehabilitation required

8

in her situation was less than in cases in which potential jurors expressed more ingrained and stronger biases. *See, e.g.*, *Fraga*, 864 N.W.2d at 623-25 (concluding that a potential juror displayed actual bias when he acknowledged that he had previous knowledge of the case and had discussed its details with family and friends).

"[T]he district court is in the best position to observe and judge the demeanor of the prospective juror" and therefore should be given deference in determining whether a juror should be removed for cause. *Prtine*, 784 N.W.2d at 310 (quotation omitted). Our deference is based on the practical reality that "[j]urors . . . cannot be expected invariably to express themselves carefully or even consistently. Every trial judge understands this, and under our system it is that judge who is best situated to determine competency and to serve impartially." *Patton v. Yount*, 467 U.S. 1025, 1039, 104 S. Ct. 2885, 2893 (1984). Here, the district court was able to observe K.J.'s demeanor, body language, and tone of voice as she responded to the district court's questioning. The district court implicitly found that K.J.'s affirmative response, "I think so," indicated that she was able to follow the court's instructions and set aside prior impressions to render a verdict based only on the evidence as applied to the law given. We defer to this determination and conclude that the district court acted within its discretion in denying the challenge for cause.

**Affirmed.**

**ROSS**, Judge (dissenting)

I respectfully dissent.

I agree that the majority accurately describes the correct standard under *State v. Fraga*, in that after a potential juror in a criminal trial reveals a bias against the defendant, the juror may sit on the trial *only* if the district court establishes "unequivocally" that the juror *will not* act on her bias. 864 N.W.2d 615, 623 (Minn. 2015). But I do not think the majority applies *Fraga* appropriately in either step of the analysis here.

I believe that the juror, K.J., expressed actual bias when she told the court, "All I know is I think I would have a hard time doing it." In context, the "it" she was referring to was "sitting in this . . . trial" and being "open to listening to everything" without giving undue, disproportionate weight to the child victim's testimony "over anybody else." She told the court that she could "[m]aybe not completely" put aside her sympathy toward the child victim, that she would have trouble sitting as a juror, that she didn't know whether she could properly weigh the evidence, and that she "can't say for sure" that she could be fair. She admitted that she would "maybe" give the prosecution "more than an even playing field," which opposes a juror's duty to presume the defendant innocent.

These repeated, consistent comments unquestionably revealed the juror's fundamental prejudices against the defendant and candidly exposed her difficulty in affording the defendant his constitutional right to a fair trial by a panel of impartial jurors. If a district court judge sitting as fact-finder said these things to a defendant before a bench trial, we would not hesitate to immediately reverse any conviction resulting from the

judge's guilty verdict. In my view, the district court judge here should have exercised that same authority and removed the juror upon the defendant's reasonable request.

It is equally clear to me that the district court never rehabilitated the juror "unequivocally" after the juror openly revealed her bias. The juror answered equivocally, only, "I *think* I can, yes" to the judge's equivocal question, "Do you *think* you can [listen fairly to the evidence, apply the law as the court gives it, and put aside all sympathy favoring the victim]?" (Emphasis added.) The judge did not ask her to declare *unequivocally* that she *would* put aside her bias, and she never volunteered that she would. Of course the majority is correct that the district judge is in the best position to observe a potential juror's "demeanor, body language, and tone of voice." But even assuming that the cold record hides from us that the juror here raised her voice, shot her fist in the air, and furrowed her brow resolutely, the most extreme passion in tone does not transform the judge's and juror's equivocation in substance into the unequivocal assurance that she *would* treat the evidence fairly to overcome her declared bias.

In the face of the juror's repeated and consistent voluntary statements expressing her apparently deeply held doubt that she would be fair to the defendant, the uncommitted "I think I can" response to the leading and softball "Do you think you can?" inquiry does not come close to the kind of certain and absolute rejection of bias necessary for convincing, "unequivocal" rehabilitation. Because of the district court's structural error of empaneling an admittedly biased juror without first unequivocally rehabilitating her, I believe that Goulet is entitled to a new trial.